PUBLIC CITIZEN HEALTH RESEARCH
GROUP, Plaintiff,

v.

DEPARTMENT OF HEALTH, EDUCA-
TION AND WELFARE et
al., Defendants,

American Association of Professional
Standards Review Organizations,
Intervening Defendant.

Civ. A. No. 77–2093.

United States District Court,
District of Columbia.

Sept. 25, 1979.

David C. Vladeck, Diane B. Cohn, Ted Bogue, Washington, D. C., for plaintiff.

Thomas W. Hussey, Atty., Justice Dept., Washington, D. C., for defendant Department of Health, Education and Welfare.

John Lewis Smith, III, Lee T. Ellis, Jr., Lawrence Lewis Lamade, Washington, D. C., for defendant National Capital Medical Foundation, Inc.

Richard G. Vernon, William G. Kopit, Washington, D. C., for intervening defendant American Assn. of Professional Standards Review Organizations.

**598**

MEMORANDUM

GESELL, District Judge.

This action, which is before the Court on cross-motions of the parties, raises the important question of whether or not certain documents describing and evaluating federally funded medical services are exempt from disclosure under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1976). Plaintiff, Public Citizen Health Research Group ("Public Citizen"), a nonprofit organization advocating the delivery of quality health care to Medicare and Medicaid patients in the District of Columbia, seeks access to four categories of records reporting health care services provided in the District. Defendant National Capital Medical Foundation, Inc. ("NCMF"), designated by defendant Department of Health, Education and Welfare ("HEW") as the Professional Standards Review Organization ("PSRO") for the District of Columbia, pursuant to 42 U.S.C. § 1320c–1 (1976), has possession of the records sought. The Court held previously that NCMF is an "agency" for purposes of FOIA, 5 U.S.C. § 552(e), and thus is subject to the disclosure provisions of the Act. *Public Citizen Health Research Group v. Department of HEW*, 449 F.Supp. 937 (D.D.C.1978).

Plaintiff here moves for summary judgment, a motion opposed by NCMF. HEW cross-moves for reconsideration of the Court's earlier Order or, alternatively, for summary judgment. Both NCMF and HEW are joined by the intervenor-defendant, American Association of Professional Standards Review Organizations ("AAPSRO"). The issues have been fully briefed, the parties have submitted voluminous affidavits and the Court also has benefitted from extensive oral argument.

The origins and functions of the PSRO program were discussed at length in the Court's earlier opinion. To summarize,

Congress in 1972, responding to the high cost of government-funded inpatient medical services, authorized the Secretary of HEW to designate PSROs as external monitors of federally funded hospital-based health care delivery. NCMF, the federally designated PSRO for the District of Columbia since 1975, contracts with HEW to review the professional services rendered by individual practitioners and institutional providers. NCMF is vested with final and binding authority to determine that care rendered is necessary and conforms to appropriate professional standards, thereby qualifying for federal reimbursement. 42 U.S.C. § 1320c–7(c) (1976).[1] Specifically, NCMF must determine: (a) whether the inpatient services rendered are medically necessary; (b) whether such services meet professional standards of quality; and (c) whether appropriate care could be provided as effectively on an outpatient basis or more economically in a different type of inpatient facility. 42 U.S.C. § 1320c–4(a)(1).

In reviewing the delivery of hospital and surgical services, PSROs such as NCMF compile many distinct types of information. Public Citizen here requests four categories of documents: (1) transmissions identifying the number of admissions, average length of stay, and frequency of disapproved services for patients having specified diagnoses or undergoing particular medical procedures in Washington, D. C. hospitals,[2] broken down by hospital and physician. This material, which is available from patient records compiled by each hospital, is applied in the course of hospital self-monitoring or ongoing PSRO reviews. Public Citizen has agreed to the deletion of patient-identifiable data from these records; (2) physician profiles for each of the five identified physicians having the greatest number of Medicaid and Medicare hospital admissions during a specified 12-month period. Profiles

---

1. Although PSRO approvals are final and binding on HEW, disapproved claimants may appeal under limited circumstances. 42 U.S.C. § 1320c–8. In its first year of operation, NCMF approved nearly 99% of the claims submitted.

2. Plaintiff's FOIA request specifies patients with a principal diagnosis of acute myocardial infarction, and patients undergoing cholecstectomy, tonsillectomy, or hysterectomy procedures.

are to be developed, on individual practitioners and institutions, to assist PSROs in evaluating the quality and necessity of medical services. 42 U.S.C. § 1320c–4(a)(4). As defined by HEW regulations, "profiles" consist of "aggregated data in formats which display patterns of health care services over a defined period of time," PSRO Transmittal No. 61 at 4 (1978); they do not call for subjective, evaluative comments. NCMF generates a semi-annual Attending Physician Activity Report which lists in tabular form the kind of descriptive data sought by plaintiff;[3] (3) hospital profiles for the five identified hospitals with the greatest number of Medicaid and Medicare admissions during a designated 12-month period. NCMF generates a series of hospital reports which, although once again not labelled "profiles," is deemed responsive by Public Citizen to its hospital profile request; (4) all Medical Care Evaluation ("MCE") studies completed by NCMF to date. MCE studies are in-depth medical service reviews aimed at effecting specific improvements in health care delivery. PSRO Program Manual, § 705.3 at VII:13–16 (1974). The studies generally deal with services rendered by a number of physicians in one or more hospitals, rather than with an individual patient or practitioner. PSROs choose MCE topics relating to widespread medical problems, and if the results of data collection reveal a failure to meet pre-established objective performance criteria, the PSRO directs that specific corrective measures be initiated and takes steps to assure that the deficiency is in fact being addressed. *See generally* PSRO Program Manual § 705.34 at VII:14 (1974); PSRO Transmittal No. 43 at 3–4 (1977). NCMF conducts regular area-wide MCE studies; it also delegates to individual hospitals the responsibility of identifying hospital-wide problem areas and

performing MCEs on those topics. Abstracts and summary data on all MCEs are transmitted regularly to HEW, which uses the information to monitor PSRO performance and to identify potential areas for technical assistance to PSROs.

Public Citizen, in requesting the four categories of documents outlined above, expressly disavows any interest in information which would identify, directly or indirectly, individual patients. Moreover, since all of the records requested are compiled regularly, defendants do not face the unacceptable burden of creating additional materials to satisfy a FOIA request. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Forsham v. Califano*, 190 U.S.App.D.C. 231, 239, 587 F.2d 1128, 1136 (D.C. Cir. 1978), *cert. granted*, —— U.S. ——, 99 S.Ct. 2159, 60 L.Ed.2d 1044 (1979).

The Court has examined *in camera* document samples submitted by NCMF for each category, and is satisfied that they would be responsive to plaintiff's request. The requested material has, however, been withheld in its entirety, and defendants argue forcefully against disclosure on the basis of five different FOIA exemptions. The Court will address each claim for exemption separately.

### Exemption Three

Defendants contend that Congress, by enacting the PSRO legislation, determined explicitly that certain materials, including those sought here, were not to be disclosed. Exemption three, as recently amended, permits nondisclosure only if a collateral statute substantially delineates the nature of or means for selecting material to be withheld.[4]

Under 42 U.S.C. § 1320c–15:

---

3. The Report lists for each physician who has 25 or more cases during the reporting period: (a) the number of cases, (b) the percentage of all cases, (c) total days of stay, (d) average age, (e) average length of stay, (f) average stay for comparable patient mix, (g) percentage of extensions referred to the physician advisor, (h) number of extensions denied or terminated, (i) percentage of stays that are uncertified, and

average length of these stays, (j) percentage of all cases that are surgical, average length of these stays, and average number of pre-operative days, (k) percentage discharged to home and percentage that died in hospital.

4. Under 5 U.S.C. § 552(b)(3) (1976), the statutory disclosure requirements do not apply to matters that are:

(a) Any data or information acquired by any Professional Standards Review Organization, in the exercise of its duties and functions, shall be held in confidence and shall not be disclosed to any person except (1) to the extent that may be necessary to carry out the purposes of the part, (2) in such cases and under such circumstances as the Secretary shall by regulations provide to assure adequate protection of the rights and interests of patients, health care practitioners, or providers of health care, or (3) in accordance with subsection (b) of this section.

Subsection (b) authorizes disclosure to assist in investigating fraud and abuse, and in implementing health care planning or related activities; in both instances disclosure can occur only with PSRO consent. The issue presented is thus whether the statutory language of subsection (a) is sufficiently precise to evidence an unambiguous congressional determination, thereby qualifying the requested documents for nondisclosure as material specifically exempted by a collateral statute.

Congress, in narrowing the scope of exemption three, limited its applicability to statutes that "significantly inform" an administrator's discretion to choose between disclosure and secrecy. *American Jewish Congress v. Kreps*, 574 F.2d 624 (D.C. Cir. 1978). If Congress confers no administrative discretion at all, the exemption will of course apply. *See Seymour v. Barabba*, 182 U.S.App.D.C. 185, 559 F.2d 806 (D.C. Cir. 1977). Section 1320c–15 does not speak in such definitive terms; subsections (a)(1) and (a)(2) vest residual discretion in the hands of the Secretary.

Nor is the discretion so particularized in its designation of criteria for withholding or types of matters to be withheld as to fit within the compass of the exemption. Under subsection (a)(1), the administrator may disclose all information he deems necessary to fulfill the statutory purpose of "promot[ing] effective, efficient and economical delivery of health care services of proper quality . . . ." 42 U.S.C. § 1320c. Such language fails to focus meaningfully on any category or class of items that Congress finds appropriate for exemption. *Stretch v. Weinberger*, 495 F.2d 639 (3d Cir. 1974). In this regard it differs crucially from the language of 35 U.S.C. § 122, withholding "patent applications and information concerning them." *See Irons & Sears v. Dann*, 196 U.S.App.D.C. —— at ——, 606 F.2d 1215 at 1220 (1979). Moreover, there are no standards or guidelines to assist the Secretary in determining what matter is or is not integral to assuring quality health care services.

Subsection (a)(2) grants to the Secretary the same virtually limitless discretion (" . . . in such circumstances as the Secretary shall by regulations provide . . . .") as is conferred for Social Security data under 42 U.S.C. § 1306. That statute has been identified as one whose terms do not bring it within exemption three. S.Rep.No.1178, 94th Cong., 2d Sess. 25 (1976) (Conf.Report). The modifying directive that the Secretary disclose only when he can "adequately" protect "rights" and "interests" does not amount to a sufficient legislative particularization of secrecy criteria. *Cf. The Founding Church of Scientology of Washington, D. C., Inc. v. Bell*, 195 U.S.App.D.C. 363 at 370, 603 F.2d 945 at 952 (1979) (nondisclosure to protect against "annoyance, embarrassment, oppression or undue burden or expense" held insufficient guidance); *American Jewish Congress v. Kreps, supra*, 574 F.2d at 630–31 (nondisclosure unless "con-

---

specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld; . . . Govern-

ment in the Sunshine Act, Pub.L.No.94–409, § 5(b), 90 Stat. 1247 (1976).

Congress added provisos (A) and (B) in 1976, following the Supreme Court's expansive reading of the exemption in *Administrator of FAA v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975).

trary to national interest" held insufficient guidance).

Defendants argue that Congress was "acutely aware" of the need to preserve PSRO confidentiality both before and after the 1976 amendment narrowing the scope of exemption three and that such legislative awareness should overcome any vagaries in statutory language. The Court's reading of PSRO legislative history does not support defendants' contention. In 1972, the PSRO provisions were added by the Senate Finance Committee to the Social Security Amendments originating in the House of Representatives as H.R. 1. Neither the Senate Report nor the Conference Report contains any discussion of the confidentiality provisions, currently codified as 42 U.S.C. §§ 1320c–15(a)(1) and (a)(2). S.Rep.No. 1230, 92d Cong., 2d Sess. 254–68 (1972); H.R.Rep.No.1605, 92d Cong., 2d Sess. 58–59 (1972) (Conf.Report), *reprinted in* [1972] U.S.Code Cong. & Admin.News pp. 5370, 5391. Section 5(h) of the Medicare-Medicaid Antifraud and Abuse Amendments of 1977, Pub.L.No.95–142, was intended to "expand and clarify" opportunities for disclosure consistent with legal requirements of confidentiality, and to this end Congress added 42 U.S.C. § 1320c–15(a)(3) & (b). While both House and Senate committee reports do advocate protecting the confidentiality of patient records, they take no position on what is at issue in this lawsuit, the status of records that do not identify individual patients. *See* H.R.Rep.No. 393(II), 95th Cong., 1st Sess. 62–63 (1977), *reprinted in* [1977] U.S.Code Cong. & Admin.News, pp. 3039, 3065–66; S.Rep.No.453, 95th Cong., 1st Sess. 22–23 (1977). Moreover, the 1977 amendments leave untouched the earlier discretionary provisions of subsections (a)(1) and (a)(2). Congressional attention to two specific areas in which disclosure is to be encouraged does nothing to narrow the broad discretion previously vested in the Secretary regarding disclosure of all other PSRO information.[5] If Congress wishes all such materials to remain secret, it must speak with a clearer voice. *American Jewish Congress v. Kreps*, 574 F.2d 624 (D.C. Cir. 1978).

## Exemption Five

Exemption five[6] protects from disclosure only those documents normally privileged in the civil discovery context. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Vaughn v. Rosen*, 173 U.S.App.D.C. 187, 194, 523 F.2d 1136, 1143 (D.C. Cir. 1975). Defendants claim as privileges relevant to this case both the physician-patient privilege and the executive or governmental privilege protecting opinions and recommendations that are part of an agency's decisional process. The physician-patient privilege is claimed for all documents in plaintiff's categories one, two and four, while governmental privilege is asserted only with regard to category four, the MCE studies.

Critical to defendants' physician-patient privilege argument is the premise that disclosure of the records sought by Public Citizen will lead to patient identification. This premise is without adequate factual support. Category one includes no patient names, and the data items which would facilitate indirect patient identification, such as age, sex, race, place of residence, and admission and discharge dates, were omitted from Public Citizen's request. Plaintiff's affidavits are persuasive as to the virtual impossibility of identifying indi-

---

**5.** The Secretary, in a recently published Notice of Proposed Rule concerning Confidentiality and Disclosure of PSRO Information, seeks to adopt detailed distinctions between confidential and publicly available information and to designate both the types of confidential materials to be released and the identity of eligible recipients. 44 Fed.Reg. 3058–66 (January 15, 1979). These proposed regulations far exceed the statutory language of § 1320c–15(a); they reflect an administrative determination as to what material is to be exempted from disclosure.

**6.** 5 U.S.C. § 552(b)(5) authorizes nondisclosure of:

inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

vidual patients under these circumstances. *See* Affidavits of George Annas at paragraph 4; Lawrence Kirsch at paragraphs 11–16. In contrast, NCMF's affidavits are couched in general, conclusory terms and offer no evidence beyond the mere possibility of identification; they must be rejected. *See* Affidavits of Norman Fuller at paragraphs 4–5; Paul Schlein at paragraphs 4–5; Alan Zuckerman at paragraphs 3–4.

The inability to identify patients based on data requested in category one applies *a fortiori* to information sought under categories two and four. Both physician profiles and MCE studies involve aggregated data organized under statistical or topical headings that bear no relation to individual patient identities. Since groupings must be large enough to allow for meaningful analysis of service patterns, profiles or MCE studies involving single or small numbers of patients would be of little value. *See* PSRO Transmittal No. 61 at 8 (profile group should contain minimum of 10–15 patients). Defendants' affidavits and *in camera* submission do not indicate that NCMF conducts any such small-scale profiles or studies.

Defendants also argue that because disclosure of MCE studies would chill the free exchange of ideas and opinions during the decision-making process the studies are protected under exemption five. Governmental privilege can never apply to an agency's final decisions or opinions; finality precludes any effect publication might have on predecisional processes. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–55, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). An administrative decision is final if it takes the form of a nonreviewable binding directive rather than a recommendation subject to further agency approval. *Id.*; *see also Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 185–90, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975). Any memoranda or analyses setting forth the reasons for a decision already made are likewise not covered by this exemption. *Renegotiation Board, supra* at 184, 95 S.Ct. 1491.

NCMF characterizes its MCE studies as advisory material containing opinions and recommendations, while Public Citizen claims them as authoritative directives.[7] After examining HEW's own guidelines on the conduct of MCEs, as well as the MCEs submitted for *in camera* inspection, the Court concludes that the studies represent final agency reports and the exemption is therefore inapplicable. The MCE process aims not at expanding medical knowledge but at implementing specific improvements in health care delivery. The written recommendations that are included in the final MCE report are directives tied to certain documented deficiencies; they are not appealable to another agency. A follow-up assessment, to be completed by the PSRO within one year, focuses only on whether directives have in fact been executed. MCE studies thus are not advisory nor are they one step in an ongoing deliberative process; their status is comparable to an administrative order.[8] *See generally* PSRO Transmittal No. 43 at 3–6 (1977); Handbook for the Conduct of Medical Care Evaluation Studies (MCEs) at 1, 18–24 (1978). In this respect, and also because they contain no individually attributable remarks, they differ from the minutes of medical staff meetings that were held not discover-

---

**7.** Public Citizen declares in its summary judgment motion that it seeks only final MCE reports and not preliminary or interim communications by the MCE committee. Any request for information in its initial letter of September 30, 1977, that is inconsistent with this position is accordingly withdrawn. If the format of NCMF's actual MCE reports differs from that portrayed in Public Citizen's request, the former controls.

**8.** While the Court need not reach the issue of segregability in light of its conclusion that the report as a whole is not predecisional, defendants' contention that exemption five protects the entire MCE report is clearly overbroad. *See EPA v. Mink*, 410 U.S. 73, 87–91, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). MCE reports contain much information that is purely factual or investigative, such as descriptions of pre-established evaluation criteria and statistical data on compliance with each criterion. NCMF has made no effort to segregate and release factual portions of the studies.

able in *Bredice v. Doctors Hospital,* 50 F.R.D. 249 (D.D.C.1970), *aff'd mem.,* 156 U.S.App.D.C. 199, 479 F.2d 920 (1973).

The Court is not insensitive to the importance of encouraging candid and conscientious evaluation by MCE committee members. The limits of such encouragement under exemption five, however, are that the document be a part of the deliberative give-and-take process. *Vaughn v. Rosen,* 173 U.S.App.D.C. 187, 195, 523 F.2d 1136, 1144 (D.C. Cir. 1975). An MCE report is not submitted until the committee has formulated its conclusions; furthermore, its recommendations are collective observations from the committee. Subjective opinions or disagreements among individual committee members do not appear in the report, and NCMF offers only conclusory assertions that such subjective expressions will be affected by disclosure of the final document.[9] This is not enough to satisfy defendants' burden under FOIA.

### Exemption Six

 Exemption six [10] contemplates a balancing test between an individual's interest in privacy and the general public's interest in government information. Plaintiff conceded, as it must, that the records sought fall within the "personnel or medical files" provision of the exemption. The factors to be considered, then, with respect to both patients and physicians,[11] are: (1) will disclosure result in an invasion of privacy and, if so, how seriously?; (2) what public interest factors favor, or oppose, disclosure and what weight should they be accorded?

Patients have a substantial interest in not being identified to the general public. Pro-

tecting the intimate details of an individual's medical file is indeed a central goal of the privacy exemption. As discussed above, however, individual identification is extremely unlikely based on the data sought by Public Citizen, even in conjunction with information already publicly available. Further, a minute risk of incidental identification does not transform disclosure of the requested documents into an "unwarranted invasion." *See Department of Air Force v. Rose,* 425 U.S. 352, 381–82, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1975); *Sears, Roebuck & Co. v. General Services Admin.,* 402 F.Supp. 378, 384–85 (D.D.C.1975), *aff'd in part, rev'd on other grounds,* 180 U.S.App.D.C. 202, 553 F.2d 1378 (D.C. Cir.), *cert. denied,* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977). To decide otherwise would, in effect, authorize the withholding of all aggregate data concerning patients, a plainly erroneous conclusion. *See Department of Air Force v. Rose, supra* at 375–76, 96 S.Ct. 1592; H.R.Rep.No. 1497, *supra* at 11.

Defendants also claim a privacy interest on behalf of physicians who provide Medicare and Medicaid services. The Court finds that such an interest is implicated under FOIA. Disclosure of physician identities in profiles or MCE studies raises the prospect of misleading publicity, possibly unwarranted professional and public criticism, and damage to professional reputation.

At the same time, this privacy invasion is not overly intrusive. Congress, in formulating exemption six, expressed particular concern over disclosure of "highly personal" information about individuals. S.Rep.No. 813, *supra* at 9; *see Getman v. NLRB,* 146

---

9. NCMF also asserts that disclosure of final MCE reports will restrict the future flow of information, factual as well as evaluative, to committee members, thereby diluting the quality of the MCE process. This assertion is addressed under exemption six.

10. The exemption allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The phrase "clearly unwarranted" evidences a congressional intention that courts balance competing interests. H.R.Rep.No.

1497, 89th Cong., 2d Sess. 11 (1966); *reprinted in* [1966] U.S.Code Cong. & Admin.News, p. 2418; S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965).

11. NCMF's assertion that hospitals have a cognizable privacy interest under FOIA is untenable. *National Parks and Conservation Ass'n v. Kleppe,* 178 U.S.App.D.C. 376, 388 n. 44, 547 F.2d 673, 685 n. 44 (D.C. Cir. 1976); *Robertson v. Department of Defense,* 402 F.Supp. 1342, 1348–49 (D.D.C.1975).

U.S.App.D.C. 209, 214, 450 F.2d 670, 675 (D.C. Cir. 1971). The revelation that a physician performs a large number of surgical procedures, or has requests for extension in hospital denied regularly, does not possess that "intimacy" which has protected records of a person's alcoholic consumption or the legitimacy of his children, *Rural Housing Alliance v. Department of Agriculture,* 162 U.S.App.D.C. 122, 498 F.2d 73 (D.C. Cir. 1974), or of his family status within the home, *Wine Hobby USA, Inc. v. Internal Revenue Service,* 502 F.2d 133 (3d Cir. 1974), or of the state of his personal finances, *Ditlow v. Schultz,* 170 U.S.App.D.C. 352, 517 F.2d 166 (D.C. Cir. 1975). Nor is the professional embarrassment suffered as likely to have consequences of an immediately personal nature as is disclosure of F.B.I. personnel names, which may lead to continuous harassment or threats of reprisal. *See generally Lesar v. Department of Justice,* 455 F.Supp. 921 (D.D.C.1978); *Tarnopol v. Federal Bureau of Investigation,* 442 F.Supp. 5 (D.D.C.1977). Unlike F.B.I. agents, physicians do not rely on anonymity or secret communications as virtual conditions of their employment.

Against these qualified values of patient and physician privacy, plaintiff presents an impressive array of affiants, experienced in the health care field, articulating important public interests that attach to disclosure of the four categories of records. Foremost is the interest in enabling the consuming public to make more fully informed choices among individual physicians and hospitals rendering Medicare and Medicaid services. The availability of objective comparative data from PSRO profiles and MCE studies would help patients facing a surgical procedure to evaluate the relative performance of providers; it would also assist physicians from outside the Washington, D.C. area who refer patients within the District. State agencies involved in health planning, institutional licensing, and Medicaid-Medicare evaluation would benefit from access to this information, as would academics conducting research on various health care delivery issues. *See generally* Exhibits A through N, attached to plaintiff's motion for summary judgment. Moreover, a better-informed public may be an added incentive to monitoring efforts by the PSROs themselves.

None of these interests reflects considerations of a purely or primarily private nature; the goal of scrutinizing government performance which is at the core of FOIA is a central aim of each of the groups mentioned. *See Ditlow v. Schultz,* 170 U.S.App. D.C. 352, 358, 517 F.2d 166, 172 (D.C. Cir. 1975). In this regard, it is important to emphasize the precise question of physician privacy that is before the Court. Plaintiff does not seek disclosure of each physician's entire professional dealings; only services that are compensated out of public funds are involved. Practitioners who contract with the government to provide medical services in exchange for federal payments perform a quasi-public function. The argument that substantial personal privacy rights attach to such performance loses much of its force when viewed in the context of Congress's abiding concern to deliver cost-efficient public health care and physicians' clear prerogative to avoid government business.

Although PSROs currently share some statistical information with state health planning and evaluation agencies, Public Citizen contends that information sought in this action is not otherwise available. NCMF's conclusory affidavits to the contrary are not persuasive in the face of Public Citizen's detailed supporting affidavits. *Compare* Affidavits of Norman Fuller at paragraph 9 *and* Paul Schlein at paragraph 9 *with* Affidavits of Beverlee Myers at paragraphs 4–7 *and* Michael Schonbrun at paragraphs 9–15.

It is argued that disclosure here will produce diminished participation by the medical profession in the PSRO process and even in the Medicare and Medicaid programs. *See* Affidavit of Michael Goran at paragraphs 7, 21, attached to HEW's cross-motion to dismiss, February 22, 1978. While this represents a public interest consideration favoring secrecy, defendants propound it only in the broadest speculative terms.

There is no evidence of a probable reduction in the total number of physicians willing to participate as PSRO members. Nor have defendants shown in any way that information on the necessity and quality of federally reimbursed medical services, which by statute must be provided to PSROs, will be denied or provided only in attenuated form if the limited information sought here is in fact disclosed. The conclusory assertion that physicians in significant numbers will refuse to treat Medicare and Medicaid patients is likewise unsubstantiated. *See Minnesota Medical Ass'n v. State,* 274 N.W.2d 84, 92 (Minn.1978).

Disclosure of a physician's identity does nothing to intrude on his confidential relationship with patients, nor does it restrict the exercise of his professional medical judgment. The conceivable adverse effect on overall physician participation does not outweigh a clear public interest in increased knowledge concerning the quality of government-funded medical services. If Congress concludes that such a hypothetically adverse impact necessitates blanket protection against disclosure, it may of course act accordingly. It has not done so.

The Court concludes that the invasion of personal privacy resulting from disclosure of certain non-patient-identifiable records is not "clearly unwarranted" in light of the important public interests at stake. *Getman v. NLRB, supra; Sears, Roebuck & Co. v. General Services Admin., supra.*

### Exemptions Four and Seven

■■■■ These two exemptions[12] need only be addressed briefly. The argument that MCE studies are the "commercial information" or "trade secrets" of a PSRO is frivolous. Plaintiff seeks no data concerning fees, payment schedules, or other commercial arrangements. Furthermore, MCE studies contain no information about secret formulas or rare treatment methods; their object is the review of prevalent medical services, not esoteric experiments. Indeed, HEW regulations specifically instruct PSROs to study commonly used medical techniques and procedures. Handbook for the Conduct of Medical Care Evaluation Studies (MCEs) at 6 (1978). Finally, NCMF as the only PSRO serving Washington, D.C. cannot suffer competitive injury from disclosure; nor will disclosure impair its ability to gather information since physicians and hospitals are required to furnish the data. *See National Parks and Conservation Ass'n v. Morton,* 162 U.S.App.D.C. 223, 498 F.2d 765 (D.C. Cir. 1974).

Exemption seven is also inapplicable because the records requested here are not compiled for law enforcement purposes. The only NCMF data even arguably covered under the exemption is sanction reports and recommendations, and Public Citizen requests no such data. What it does request is precisely the kind of ordinary medical review material that, "despite occasionally alerting the administrator to violations of the law, is acquired essentially as a matter of routine." *Center for National Policy Review v. Weinberger,* 163 U.S.App.D.C. 368, 371, 502 F.2d 370, 373 (D.C. Cir. 1974); *Rural Housing Alliance v. Department of Agriculture,* 162 U.S.App.D.C. 122, 130, 498 F.2d 73, 81 (D.C. Cir. 1974).

### Agency Status

■■■■ In addition to the exemptions claimed, HEW and AAPSRO urge the Court to reconsider its ruling that NCMF is an "agency" under FOIA, in light of the subsequent decision in *Forsham v. Califano,* 190 U.S.App.D.C. 231, 587 F.2d 1128 (D.C. Cir. 1978), *cert. granted,* —— U.S. ——, 99 S.Ct. 2159, 60 L.Ed.2d 1044 (1979). *Forsham* involved raw data from a federally funded research study which formed the basis for recommendations by a federal agency, although the study itself was funded without any specific regulatory objectives in mind. Since neither the funding agency nor the agency making recommen-

---

12. Under 5 U.S.C. § 552(b)(4), matters exempt from disclosure must be "trade secrets" or "commercial and financial information obtained from a person and privileged or confidential." Exemption seven, 5 U.S.C. § 552(b)(7), protects from disclosure certain investigatory records compiled for law enforcement purposes.

dations had possession of the raw data requested, and the 13 recipients of research grants that did were not themselves an "agency," no "agency record" existed for purposes of FOIA. *Id.* 190 U.S.App.D.C. at 238–239, 587 F.2d at 1135–36.

The decision in *Forsham* does not disturb this Court's prior holding. The Circuit Court's primary line of reasoning, concerning the degree of federal involvement necessary to transform data into "agency records," need not be reached if the possessor and producer of the data is itself an agency. NCMF undisputedly possesses and controls the production of all relevant documents here; moreover, it satisfies the test for agency status previously promulgated by this Circuit and endorsed in *Forsham.* To qualify as an agency under FOIA, 5 U.S.C. § 552(e), an organization must exercise substantial independent authority in performing its particular functions, *Washington Research Project, Inc. v. Department of HEW,* 164 U.S.App.D.C. 169, 179, 504 F.2d 238, 248 (D.C. Cir. 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975); *Soucie v. David,* 145 U.S.App.D.C. 144, 152, 448 F.2d 1067, 1075 (D.C. Cir. 1971), and it must be sufficiently controlled by government to justify attributing governmental character to its operations. *Rocap v. Indiek,* 176 U.S. App.D.C. 172, 175, 539 F.2d 174, 177 (D.C. Cir. 1976). *See* H.R.Rep.No.876, 93d Cong., 2d Sess. 8 (1974), *reprinted in* [1974] U.S. Code Cong. & Admin.News, pp. 6267, 6274; S.Rep.No.1200, 93d Cong., 2d Sess. 9 (1974) (Conf.Report), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 6285, 6293.

The holding in *Forsham* that private medical centers receiving pure research grants lack the independent decisional authority to qualify as an agency is clearly distinguishable from the facts of this case. As noted above, NCMF has statutory authority to make final, binding decisions, and it exercises such authority on a regular basis just as Congress intended. The conclusion that the 13 medical centers in *Forsham* are not sufficiently subject to day-to-day federal control must also be distinguished here. The PSRO statute established pervasive procedural requirements for virtually every phase of PSRO activities, and organizational requirements governing selection of the PSRO entity and its members. These statutory obligations are supplemented extensively by HEW regulations and by the PSRO Transmittals and Program Manual which are binding on each PSRO. *See* NCMF Contract, Art. XIV, (July 1, 1977), attached to defendants' Affidavit of Michael Goran. In short, PSROs such as NCMF perform a characteristically governmental function and are subject to detailed government control in their program planning and implementation.

Defendants have failed to establish the applicability of any exemptions claimed. Accordingly, plaintiff's motion for summary judgment is hereby granted and defendants' motion for reconsideration or summary judgment is hereby denied. The Court in entering its earlier decision that NCMF is an "agency," felt that an immediate appeal would not materially advance the ultimate termination of the litigation. It denied NCMF's request for an interlocutory appeal, but assured defendants that a stay would be entered upon resolution of the entire controversy. All further proceedings in this action are now stayed for 30 days, to allow defendants to seek a stay pending appeal in the United States Court of Appeals for the District of Columbia Circuit.

SO ORDERED.