David H. Pingree Secretary, Department of Health and Rehabilitative Services Tallahassee
QUESTIONS:
1. Is the Department of Health and Rehabilitative Services required to disclose, upon request of any member of the public, information concerning annual amounts of reimbursements paid to Medicaid providers if that information reveals the identity of providers?
2. Is the Department of Health and Rehabilitative Services required to disclose, upon request of any member of the public, information, stamped `trade secrets' by the provider, received by the department from a Medicaid provider pursuant to contract?
SUMMARY:
Unless determined to the contrary by a court of competent jurisdiction, in the absence of an express provision of federal law making this type of information confidential, records of the Department of Health and Rehabilitative Services regarding annual amounts of reimbursements paid to Medicaid providers are subject to public inspection and examination under Florida's Public Records Law provided that such information does not name or otherwise identify applicants or recipients of Medicaid benefits. The fact that a Medicaid provider has stamped information submitted to the Department of Health and Rehabilitative Services `trade secrets' does not in itself make such information a trade secret for purposes of s. 812.081, F. S., or exempt such information from the requirements of the Public Records Law. Such a determination must be made by examination of the statute; however, it does not appear that information regarding the extent of services provided or the claims for payment submitted by Medicaid providers would qualify as `trade secrets' within the meaning of s. 812.081.
You state that the Department of Health and Rehabilitative Services has received a request from a member of the public for information concerning Medicaid providers. You therefore inquire as to the department's duties, responsibilities, and liabilities under federal law, ch. 119, F. S., and s. 812.081, F. S., pertaining to trade secrets.
Medicaid is a governmental health care program which provides assistance to eligible categorically needy persons in meeting the cost of medical care. The program is financed from county, state, and federal funds. See Rule 10C-7.30 of the Rules of the Department of Health and Rehabilitative Services. The Department of Health and Rehabilitative Services had been designated as the state agency responsible for the administration of Medicaid funds under Title XIX of the Social Security Act, 42 U.S.C. § 1396 etseq. See s. 409.266, F. S. See also 42 U.S.C. § 1396 which provides:
 For the purpose of enabling each State . . . to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this title. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary of Health, Education, and Welfare, State plans for medical assistance.
You have not indicated whether the contract between the state and the Federal Government places and restrictions on the release of Medicaid information or otherwise provides for the confidentiality of information obtained from Medicaid records. It is therefore assumed for the purposes of this inquiry that no such restrictions or provisions exist. You have submitted for this office's consideration copies of standard contracts between the department and Medicaid providers. The contracts do not, however, place any restriction on the release of financial data secured by the state.
AS TO QUESTION 1:
Florida's Public Records Law, ch. 119, F. S., makes all state, county, and municipal records open to personal inspection by any person. Section 119.01. See also s. 119.07(1), requiring the custodian of public records to permit the inspection and examination of such records by any person desiring to do so, at reasonable times, under reasonable conditions, and under the supervision of the custodian of the records. For the purpose of ch. 119, `agency' is defined by s. 119.011(2) to include `any state . . . officer, department, division, board, bureau, commission . . . and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency.' It is clear that the Department of Health and Rehabilitative Services is an `agency' under the foregoing definition and is thus subject to the provisions of ch. 119. Section 119.011(1) defines `public records' to include all documents, papers, letters, books, tapes, or other materials, regardless of physical form or characteristics, made or received pursuant to law or in connection with the transaction of official business by any governmental agency. Clearly, any such records containing the names of certain physicians in Florida who have provided medical services to Medicaid beneficiaries and information as to the amount of Medicaid disbursements by the department generated by the services each physician has rendered are made or received by the department in connection with the transaction of its official business and as such are `public records' as defined in s. 119.011(1). Cf. Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc., 379 So.2d 633 (Fla. 1980). Such records would therefore be subject to personal inspection by any person as provided in ss. 119.01 and 119.07(1), unless the provisions of s. 119.07(3) are applicable.
Section 119.07(3), F. S., provides that `[a]ll public records which are presently provided by law to be confidential or which are prohibited from being inspected by the public, whether by general or special law, shall be exempt from the provisions of subsection (1).' See s. 119.07(3)(b), which lists several such statutory exemptions, and Wait v. Florida Power and Light Co.,372 So.2d 420, 425 (Fla. 1979), in which the court, directly construing s. 119.07(3) (then s. 119.02(2)), held that the language `provided by law' contained therein `excludes any judicially created privilege of confidentiality and exempts from public disclosure only those public records that are provided by statutory law to be confidential or which are expressly exempted by general or special law.' Thus, records made or received by a public agency in connection with its official duties or the transaction of its official business will be confidential or exempt from public inspection only if so provided by law.
I am unaware of any state statute presently in existence which purports to make the names of those physicians providing medical services of Medicaid beneficiaries within the state and the amount of Medicaid payments to such physicians confidential or prohibits the inspection and examination of public records containing such information by any person. Thus, under state law, records containing such information are public records within the purview of the Public Records Law and are subject to personal inspection and examination by any person. Nor is there a state constitutional right of disclosural privacy which would exempt these records from public inspection or view. The Florida Supreme Court recently considered whether such a right existed under the State Constitution which would exempt certain types of records from public view or inspection. See Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc., supra, in which the court stated that `there is no support in the language of any provision of the Florida Constitution or in the judicial decisions of this state to sustain the district court's finding of a state constitutional right of disclosural privacy.' Nor can this office conclude that such information is protected by a federal constitutional right of privacy; such a determination would have to be made by a court of competent jurisdiction. I would note, however, that in Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc., supra, the Florida Supreme Court stated:
 The principles involved in [Paul v. Davis, 424 U.S. 693
(1976)] and in the present case are strikingly similar. Both involve the release of information concerning an official act of government that is allegedly damaging to the protestants. In Paul, the Court found no privacy interest to protect, and in the present case we reach the same conclusion. The [United States] Supreme Court may some day breathe life into the privacy interest asserted by respondents, but, until that occurs, we conclude that there does not exist, under the facts of this case, a constitutionally protected interest sufficient to prevent the public from seeing the consultant's papers.
Moreover, Title XIX, ss. 1901-1912, Grants to States for Medical Assistance Programs, 42 U.S.C. § 1396 et seq., does not appear to require that the type of information in question in the instant inquiry be kept confidential. While the act does require that the state plan for Medicaid payments `provide safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with the administration of the plan,' see 42 U.S.C. § 1396a(a)(7), no similar restriction is placed upon the disclosure of information concerning Medicaid providers. See generally 42 C.F.R. ss. 431.300-431.306 implementing the provisions of42 U.S.C. § 1396a(a)(7), specifically42 C.F.R. § 431.305 which provides that the types of information so restricted include, but are not limited to: the names and addresses of applicants and recipients, information concerning the medical services provided or relating to the social and economic conditions or circumstances of a particular applicant or recipient, medical data, and an agency evaluation of personal information about a particular individual. Thus, unless the records in question in the instant inquiry contain information which identifies an applicant or recipient of Medicaid benefits or the services provided to such individual, the information regarding payments to Medicaid providers is not confidential under the terms of the Medicaid Act. If any such records should contain any of the aforementioned restricted information or information exempted by s. 119.07(3), F. S., then, pursuant to s. 119.07(2)(a), such portion of a particular record to which the prescribed exemption applies should be deleted or excised to eliminate the restricted information therefrom, and the remainder of the particular record should be produced for public inspection and examination.
If a federal statute requires that particular records be closed and the state is clearly subject to the provisions of the federal statute, then, pursuant to the Supremacy Clause of the United States Constitution, s. 2, Art. VI, U.S. Const., the state is required to keep such records and the information contained therein confidential. See AGO 073-278, in which this office concluded that reports submitted to the Division of Pari-mutuel Wagering in connection with license and permit applications are open to inspection unless submitted by a consumer reporting agency whose reports are subject to the Fair Credit Reporting Act,15 U.S.C. § 1681, and which may be made available for inspection only in accordance with the provisions of the federal act. Cf. AGO 074-372. Records which would otherwise be public under state law would thus not be available for public inspection only when there is an absolute conflict between state and federal record disclosural provisions. See State ex rel. Cummer v. Pace,159 So. 679, 681-682 (Fla. 1935), in which the Florida Supreme Court, in ordering information relating to the operation of the municipal docks of the City of Jacksonville opened for public inspection, stated:
 The details of the management and operation of the municipal docks and terminals of Jacksonville are not within the exclusive control of the federal government, but are within the control of the Legislature of the state of Florida, which in the enactment of section 490, C.G.L., supra, has extended to any citizen of Florida the unrestricted privilege of examination of the books and records of municipalities in order that such citizens may advise themselves concerning the operation and conduct of the public affairs which such municipalities are authorized to carry on.
 The protection of the federal statute was contrived for the particular benefit of the shippers and consignees of common carriers engaged in interstate commerce subject to the Interstate Commerce Act. There is nothing in its provisions to indicate that it was intended to so impinge upon the operation of state statutes, allowing an inspection of the public records of municipalities by citizens, as to completely deny to the citizen his statutory rights under the laws of this state, merely because some of the books and records sought to be examined might contain information of a character falling within the purview of the hereinbefore quoted federal law relating to disclosure of information by carriers subject to the Interstate Commerce Act.
In the absence of any express provision in the federal act regarding Medicaid payments, which provision restricts the use or disclosure of information contained in otherwise public records concerning Medicaid providers and disbursements by the department to them, I cannot say that such records are not available for and subject to public inspection and examination as required by ch. 119, F. S., under 42 U.S.C. § 1396 et seq.
You specifically refer to an opinion of a federal district court in which the court enjoined the disclosure of records regarding the annual reimbursement amounts under the Medicare Act under the provisions of the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. See Florida Medical Association, Inc. v. Department of Health, Education and Welfare, Case No. 78-178-Civ-J-S (M.D.Fla., filed October 22, 1979). The court concluded that the list of annual reimbursements to Medicare providers would be within the term `similar files' of5 U.S.C. § 552(b)(6), which exempts `personnel and medical files and similar files' from the mandatory disclosure provisions of the Freedom of Information Act when such disclosure `would constitute a clearly unwarranted invasion of personal privacy.' After applying a balancing test, the district court concluded that the information was exempt from the mandatory disclosure provisions of5 U.S.C. § 552 and was thus protected by the Privacy Act, 5 U.S.C. § 552a. The court, however, was considering the Medicare Act, not the Medicaid Act; the Department of Health and Rehabilitative Services was not a party in that action, nor was the court faced with a duly enacted state statute, as in the instant inquiry, which would require that these records be open for public inspection. Cf. State v. Dwyer, 332 So.2d 333 (Fla. 1976) (even though federal lower court rulings may be persuasive, such rulings are not binding on state court); Pomponio v. Claridge of Pompano Condominium, Inc., 378 So.2d 774 (Fla. 1979) (state Supreme Court, when construing a provision of the State Constitution, is not bound to accept United States Supreme Court's interpretation of a parallel provision of the federal constitution).
Moreover, the provisions of the Freedom of Information Act and the Privacy Act, 5 U.S.C. ss. 552 and 552a, respectively, are not expressly applicable to state agencies. See 5 U.S.C. § 551(1), which states that `agencies' include each authority of theUnited States Government, and 5 U.S.C. § 552(e); cf. Kerr v. United States District Court for the Northern District of California,511 F.2d 192 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976) (5 U.S.C. § 552 limited to authorities of United States Government, not agencies of a state), and Ciccone v. Waterfront Commission of New York Harbor, 438 F. Supp. 55 (S.D.N.Y. 1977) (as a state instrumentality, commission is not an `agency' within meaning of5 U.S.C. § 552). If, however, an agency or organization exercises substantial independent authority in performing its particular function, yet is sufficiently controlled by the Federal Government to justify attributing such a governmental character to its operation, then the organization is an `agency' for the purposes of the Freedom of Information Act. See Public Citizen Health Research Group v. Department of Health, Education and Welfare,477 F. Supp. 595 (D.D.C. 1979), and Ciba-Geigy Corporation v. Mathews, 428 F. Supp. 523 (S.D.N.Y. 1977) (if governmental agency automatically adopts organization's decision as its own, then organization can be considered to be functional equivalent of governmental agency and its records subject to disclosure under the Freedom of Information Act); see also 5 U.S.C. § 552a(m) which states that, when an `agency' provides by contract for the operation by or on behalf of the agency of a system or records to accomplish an agency function, the agency shall cause the requirements of the Privacy Act to be applied to such system; such contractor shall be considered to be an employee of an agency. However, whether the Department of Health and Rehabilitative Services is subject to the provisions of 5 U.S.C. ss. 552 and 552a and whether the term `similar files' contained in5 U.S.C. § 552(b)(6) of the Freedom of Information Act encompasses the information and records in question in the instant inquiry and would prohibit the disclosure of such records under the Federal Privacy Act are judicial questions which must be determined by a court of competent jurisdiction. Cf. Department of Air Force v. Rose, 425 U.S. 352 (1976), and Celmins v. United States Department of the Treasury, Internal Revenue Service, 457 F. Supp. 13
(D.D.C. 1977) (in conducting balancing test to determine whether invasion of privacy would result from disclosure and thus whether records should be exempt, courts are to tilt in favor of disclosure). See also Bristol-Myers Co. v. Federal Trade Commission, 424 F.2d 935 (D.C. Cir.), cert. denied, 400 U.S. 824
(1970) (Freedom of Information Act creates liberal disclosure requirements, limited only by specific exemptions which are to be narrowly construed), and National Association of Government Employees v. Campbell, 593 F.2d 1023 (D.C. Cir., 1978) (statutory exemptions within 5 U.S.C. § 552 are to be narrowly construed). I cannot therefore conclude that the federal district court's decision in Florida Medical Association v. Department of Health, Education and Welfare, supra, operates to authoritatively prohibit the Department of Health and Rehabilitative Services from disclosing information concerning the amounts of reimbursements paid to Medicaid providers. Rather, the department is required to comply with and give effect to the requirements of ch. 119, F. S., until such time as the federal or state Supreme Court may determine that Florida's Public Records Law, as applied to the facts inherent in the instant inquiry, is unconstitutional. See
Pickerill v. Schott, 55 So.2d 716 (Fla. 1951) (duty of state officer to observe the law as he found it until in a proper proceeding its constitutionality is judicially passed upon); White v. Crandon, 156 So. 303 (Fla. 1934); and State ex rel. Atlantic Coastline R. Co. v. State Board of Equalizers, 94 So. 681 (Fla. 1922).
Accordingly, until and unless determined to the contrary by a court of competent jurisdiction, I am of the opinion that in the absence of an express provision of federal law making this type of information confidential, the records of the Department of Health and Rehabilitative Services regarding annual amounts of reimbursements paid to Medicaid providers are subject to public inspection under the Florida Public Records Law, provided that such information does not identify applicants or recipients of Medicaid benefits. Cf. Opinion of the Ohio Attorney General 76-011 (issued February 24, 1976), concluding that, under Ohio's Public Records Law (which, among other things, specifically excluded records the release of which is prohibited by federal law), cost reports filed by nursing homes with the Ohio Department of Public Welfare for reimbursement under the Medicaid program are records required to be kept and are to be open for public inspection without prior express authorization by the nursing homes; fiscal reviews of nursing homes by the Ohio Department of Public Welfare's Bureau of Fiscal Review are records required to be kept and are open for public inspection subject, when applicable, to federal requirements that names of Medicaid recipients not be publicly released; also cf. Citizens for Better Care v. Reizen,215 N.W.2d 576 (Mich. 1974).
AS TO QUESTION 2:
You inquire whether the Department of Health and Rehabilitative Services is required to open for inspection and examination information stamped `trade secrets' by the provider received by the department from a medicaid provider pursuant to contract. You do not specify in your letter the type of information received; therefore, any comment expressed herein must be general in nature because a determination whether particular information qualifies as a `trade secret' would have to be made on a case-by-case basis. The fact, however, that a Medicaid provider has stamped the information `trade secrets' does not in itself exempt such information from the requirements of the Public Records Law. See
AGO 071-394 in which this office stated that reports received and marked `confidential' by the sender must be open to public inspection unless exempted from disclosure by the Legislature. Cf. Browning v. Walton, 351 So.2d 38 (D.C.A. Fla., 1977) (the fact that city employees had returned a form requesting the city to maintain confidentiality of all materials in their personnel files did not exempt that material from inspection under the Public Records Law). It is the law which determines the character of a communication, not the will of the sender. See Egan v. Board of Water Supply, 98 N.E. 467, 475 (N.Y. 1912).
Section 812.081(2), F. S., makes it a misdemeanor of the first degree for any person
 . . . who, with intent to deprive or withhold from the owner thereof the control of a trade secret, or with an intent to appropriate a trade secret to his own use or to the use of another, steals or embezzles an article representing a trade secret or without authority makes or causes to be made a copy of an article representing a trade secret. (Emphasis supplied.)
`Article,' for the purposes of this statute, means any object, device, machine, material, substance, or composition of matter, or any mixture or copy thereof, whether in whole or in part, including any complete or partial writing, record, recording, drawing, sample, specimen, prototype model, photograph, microorganism, blueprint, map, or copy thereof. Section812.081(1)(a). `Trade secret' is defined for the purposes of this section to mean
 . . . the whole or any portion or phase of any formula, pattern, device, combination of devices, or compilation of information which is for use, or is used, in the operation of a business and which provides the business an advantage, or an opportunity to obtain an advantage, over those who do not know or use it. `Trade secret' includes any scientific, technical, or commercial information, including any design, process, procedure, list of suppliers, list of customers, business code, or improvement thereof. Irrespective of novelty, invention, patentability, the state of the prior art, and the level of skill in the business, art, or filed to which the subject matter pertains, a trade secret is considered to be:
1. Secret;
2. Of value;
3. For use or in use by the business; and
 4. Of advantage to the business, or providing an opportunity to obtain an advantage, over those who do not know or use it
when the owner thereof takes measures to prevent it from becoming available to persons other than those selected by the owner to have access thereto for limited purposes. [Section 812.081(1)(c).]
The parameters of this statute have not been extensively litigated in this and other jurisdictions; however, it does not appear that information received by the department from Medicaid providers pursuant to contract concerning the amounts of reimbursements paid to such providers would generally qualify as `trade secrets' within the contemplation of s. 812.081, so as to prevent the Department of Health and Rehabilitative Services from making such information available for public inspection and examination. See42 U.S.C. § 1396a(a)(27) which requires a state plan to provide for agreements with every person or institution providing services under the state plan under which such person or institution agrees to keep such records as are necessary to fully disclose the extentof services provided to individuals receiving assistance under the state plan and to furnish the state agency or the secretary with such information regarding any payments claimed by such person or institution for providing services under the state plan as the state agency or secretary may from time to time request. Information regarding the extent of services provided or the payments claimed for reimbursement does not appear to fall within the definition of a trade secret or an article representing a trade secret contained in s. 812.081(1) as would any formula, pattern, device or combination of devices, or compilation of information which is used in the operation of a business and which gives the business an advantage over those who do not know or use it.
Prepared by: Joslyn Wilson, Assistant Attorney General