The FOUNDING CHURCH OF SCIEN-
TOLOGY OF WASHINGTON, D. C.,
INC., Appellant,

v.

Griffin B. BELL et al.

No. 78–1391.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 3, 1979.

Decided June 25, 1979.

As Amended July 2, 1979.

Earl C. Dudley, Jr., Washington, D. C., with whom Kenneth G. Starling, Washington, D. C., was on brief, for appellant.

Joseph B. Scott, Atty., Dept. of Justice, Washington, D. C., for appellees. Barbara Allen Babcock, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Leonard Schaitman and Emile L. Julian, Attys., Dept. of Justice, Washington, D. C., were on brief for appellees.

Before WRIGHT, Chief Judge, and McGOWAN and ROBB, Circuit Judges.

Opinion for the court *per curiam*.

PER CURIAM:

In February 1975 appellant, the Founding Church of Scientology (Church), submitted a request under the Freedom of Information Act (FOIA)[1] for all records of the Federal Bureau of Investigation (FBI) pertaining to the Church, its related organizations, and its founder, L. Ron Hubbard. Dissatisfied with the FBI's response,[2] appellant filed this FOIA action in District Court on September 26, 1975 to force disclosure of the Bureau's files.[3] The Church now chal-

---

[1]. 5 U.S.C. § 552 (1976).

[2]. On July 22, 1975 the FBI released a few documents to the Church and claimed that all other relevant material was exempt from disclosure under FOIA. Joint Appendix (JA) 23–24 (letter from C. Kelley, Director of FBI, to M. Lobel, July 22, 1975).

[3]. JA 9–14 (complaint). Appellant briefly pursued an administrative appeal to the Attorney

General, JA 25–29 (letter from M. Lobel to Attorney General, Aug. 5, 1975), but initiated this suit before that appeal was resolved. No problem of exhaustion of remedies arises here because under 5 U.S.C. § 552(a)(6)(C) (1976) such remedies are "deemed" to have been exhausted if the agency does not release the requested documents within 30 days of the request.

lenges the District Court's grant of summary judgment in favor of the FBI.[4]

Appellant argues that the Government did not provide a sufficiently detailed and reasoned explanation of the grounds for withholding the documents sought here, and that the District Court misapplied several provisions of the Act. We agree. Part I of this opinion will consider the adequacy under *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), of the agency's response to appellant's FOIA request, and Part II will examine several features of the District Court's interpretation of the Act.

## I

In *Vaughn v. Rosen* this court held that an agency's response to a FOIA request must include an index of all material withheld in whole or in part. The *Vaughn* index must explain specifically which of the nine statutory exemptions to FOIA's general rule of disclosure supports the agency's decision to withhold a requested document or to delete information from a released document.[5] We have observed repeatedly that the *Vaughn* index is critical to effective enforcement of FOIA.[6] Without such an index neither reviewing courts nor individuals seeking agency records can evaluate an agency's response to a request for government records.

## A

The FBI's unsuccessful attempts to provide an adequate *Vaughn* index began shortly after this suit was filed. In response to interrogatories FBI Agent John E. Howard submitted an affidavit on January 30, 1976 (First Howard Affidavit) with an attached exhibit that purported to describe each document covered by appellant's FOIA request and to give reasons for any nondisclosure.[7] The Government filed two more affidavits when it moved for summary judgment on May 5, 1976. One, prepared by Howard (Second Howard Affidavit), included copies of all material released by the FBI,[8] while the other supported Howard's claim that the Bureau was withholding information received from security agencies of foreign nations (Bermingham Affidavit).[9] The Second Howard Affidavit identified 324 documents in FBI files as relevant to the Church's request, of which 244 were at least partly released. It divided all the documents into seven categories and listed for each category the FOIA exemptions that the FBI claimed for nondisclosure. Deletions in particular documents were not correlated with the exemptions on which they were based, nor were specific explanations offered for each withheld document. On June 10 the District Court ruled that the Government had not met the requirements of *Vaughn v. Rosen* and ordered that a new index be prepared.[10]

The FBI on November 11, 1976 released some 60 additional documents and filed yet another affidavit from Howard (Fourth Howard Affidavit).[11] For the first time the Bureau provided a description of each docu-

4. JA 71–78 (Opinion and Order, Jan. 24, 1978).

5. For discussion of several FOIA exemptions and the general structure of the Act, *see* Part II *infra*.

6. *See, e. g., Ray v. Turner*, 190 U.S.App.D.C. 290, 294–295, 587 F.2d 1187, 1191–1192 (1978); *Mead Data Central, Inc. v. United States Dep't of Air Force*, 184 U.S.App.D.C. 350, 359, 566 F.2d 242, 251 (1977); *Pacific Architects & Engineers, Inc. v. Renegotiation Board*, 164 U.S. App.D.C. 276, 278, 505 F.2d 383, 385 (1974). When Congress amended the Freedom of Information Act in 1974, the Senate Report specifically approved of the index requirement in *Vaughn*. S.Rep.No. 93–854, 93d Cong., 2d Sess. 15 (1974), *reprinted in* Staffs of Senate Committee on the Judiciary and House Committee on Government Operations, Freedom of Information Act and Amendments of 1974 (Pub.L.No. 93–502): Sourcebook: Legislative History, Texts, and Other Documents (Comm. Print 1975), at 169 (hereinafter cited as Source Book).

7. Exhibits, Vol. I, at 1–40.

8. *Id.* at 43–641.

9. *Id.* at 642–644.

10. JA 40–41.

11. Exhibits, Vol. II, at 1–490.

ment at issue, although in many instances particular deletions were still not linked to the appropriate exemptions. The FBI also submitted an affidavit explaining the need to invoke the national security exemption to FOIA with respect to three documents (Poptanich Affidavit).[12]

On May 5, 1977, while the case was pending before the District Court, the Attorney General announced new guidelines for handling FOIA litigation. The court then ordered the Government to reprocess appellant's request in accordance with the new guidelines,[13] an undertaking that produced four more affidavits from the FBI. Agent Donald Hoeting stated in an affidavit of July 20, 1977 (First Hoeting Affidavit) that 605 pages of documents had been at least partly released by the FBI,[14] and that 126 more would now become available.[15] The newly released documents were listed in a submission to the court on July 27, 1977 (Second Hoeting Affidavit).[16] Attached to another affidavit prepared by Hoeting on September 13, 1977 (Third Hoeting Affidavit) were copies of the 731 pages of documents that by then had been provided in whole or in part.[17] After oral argument on the Government's motion for summary judgment, the FBI submitted on October 17 a final affidavit from Agent Martin Lindblom dealing with an additional 45 documents (Lindblom Affidavit).[18] The District Court, noting that the FBI had released at least portions of approximately three-quarters of the 1,100 pages of FBI records relating to appellant's FOIA request, granted the Government summary judgment motion on January 24, 1978.[19]

**B**

According to the Government, if one simultaneously consults the Fourth Howard Affidavit, the First and Third Hoeting Affidavits, and the Lindblom and Poptanich Affidavits, one can divine the asserted justification for withholding or deleting all material at issue here. Thus, the Government continues, the FBI discharged its obligation to provide a *Vaughn* index. The Government is mistaken.

A central purpose of the index requirement is to facilitate court review of agency FOIA rulings by making clear the basis for the agency's refusal to release certain information. The FBI's "index" in this case falls far short of this goal of enhancing judicial economy. We have attempted to trace only some of the 354 documents involved in this case, and have found the five affidavits cited by the Government not merely unwieldly, but frequently confusing. For many documents different exemptions are claimed in different affidavits.[20] A plausible rule of interpretation would be to consider only the exemption claimed in the last affidavit. Because of the numerous cross-references among the affidavits, however, we cannot be certain that such a course is correct. In addition, only the Fourth Howard Affidavit provides a brief description of each document, but the ex-

---

12. *Id.* at 508–509.

13. JA 6.

14. Exhibits, Vol. III, at 2.

15. The additional documents were released because the Government abandoned most of its previous claims for nondisclosure under Exemption 2 of FOIA, 5 U.S.C. § 552(b)(2) (1976), which covers internal personnel procedures. *See* JA 76.

16. Exhibits, Vol. III, at 54–58.

17. *Id.* at 59–807.

18. *Id.* at 808–809.

19. JA 71–78.

20. For example, the Lindblom Affidavit claims Exemption 1, 5 U.S.C. § 552(b)(1) (1976), to protect national security information in four documents (K–17, K–18, K–23, K–27). Exhibits, Vol. III, at 811–813. The First Hoeting Affidavit, however, asserts that those documents should be withheld as internal advisory opinions (Exemption 5, 5 U.S.C. § 552(b)(5)) and to protect individual privacy (Exemption 6, 5 U.S.C. § 552(b)(6)). Exhibits, Vol. III, at 51–52. Yet the only description of the four documents appears in the Fourth Howard Affidavit, which invokes Exemption 2 (5 U.S.C. § 552(b)(2)), which covers internal personnel information of no significance, and Exemption 1. Exhibits, Vol. II, at 417, 418, 429, 438.

emptions claimed in that statement were in many instances altered in later FBI affidavits. Thus the only descriptions of the documents are tied to statutory exemptions that the agency may no longer assert. Finally, for some documents the FBI offered insufficient justification for withholding information under *any* of the exemptions claimed.

The "index" presented here also fails to correlate material deleted from released documents with the exemption claimed as justification for nondisclosure. As we recently stated when confronted with a similar *Vaughn* index, "The reviewing court should not be required to speculate on the precise relationship between each exemption claim and the contents of the specific document." [21] Yet the First Hoeting Affidavit, for example, asserts that the six deletions in Document B–15 are based on three distinct exemptions,[22] and that the eight deletions in Document A–76 are also based on three exemptions.[23] A court cannot gauge the correctness of the agency's actions without at least knowing the rationale for each deletion.

■ On remand the agency should concentrate on three indispensable elements of a *Vaughn* index:

(1) The index should be contained in one document, complete in itself.

(2) The index must adequately describe each withheld document or deletion from a released document.

(3) The index must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant. Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA.

These requirements do place an administrative burden on the agencies, but less exacting standards would not satisfy the FOIA's unambiguous policy in favor of the fullest possible disclosure of government records.

## II

We also believe the District Court misinterpreted several substantive provisions of the Act. Our remand must therefore include our view of the questions of law involved here.

■ The basic principles of the Act are well established. Government files must be provided to the public on request unless there are compelling reasons for nondisclosure.[24] Congress specified nine exemptions to this rule of disclosure [25] and placed the burden on the Government to establish the correctness of a claimed exemption in a trial *de novo* in District Court.[26] The legislative history of the Act and the 1974

---

**21.** *Ray v. Turner, supra* note 6, 190 U.S.App. D.C. at 300, 587 F.2d at 1197. *See Schwartz v. Internal Revenue Service,* 167 U.S.App.D.C. 301, 304, 511 F.2d 1303, 1306 (1975) (an agency must "correlate the theories of exemption with the particular textual segments which it desire[s] exempted"); *Vaughn v. Rosen,* 157 U.S. App.D.C. 340, 347, 484 F.2d 820, 827 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) (need for "itemized explanation"); *Mead Data Central, Inc. v. United States Dep't of Air Force, supra* note 6, 184 U.S.App.D.C. at 359, 566 F.2d at 251 (the agency "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply").

**22.** Exhibits, Vol. III, at 33, 628–629.

**23.** *Id.* at 12, 273–274.

**24.** The affirmative obligation to disclose public records is outlined in 5 U.S.C. § 552(a) (1976). *See NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 221, 98 S.Ct. 2311, 2316, 57 L.Ed.2d 159 (1978) (unless the requested material is within a statutory exemption, "FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the general public"); *Vaughn v. Rosen, supra* note 21, 157 U.S.App.D.C. at 347, 484 F.2d at 823 (citing FOIA's "overwhelming emphasis upon disclosure").

**25.** 5 U.S.C. § 552(b) (1976).

**26.** *Id.* § 552(a)(4)(B).

amendments to it support a narrow construction of the exemptions.[27] Moreover, if only part of a document need be withheld under an exemption, Congress has directed that the Government must segregate the exempt passages and disclose the remainder.[28] Finally, District Court decisions in FOIA cases must provide statements of law that are both accurate and sufficiently detailed to establish that the careful *de novo* review prescribed by Congress has in fact taken place.[29] We do not think that the District Court's construction of several FOIA exemptions is consistent with these standards.

**■** EXEMPTION 1—Three documents were withheld under this exemption on the ground that they involve national security matters and have been "properly classified pursuant to [Executive Order 11652]."[30] According to the Poptanich Affidavit, the documents contain lists of FBI agents "responsible for and engaging in authorized electronic surveillance."[31] Appellant does not challenge this claim, but urges that the Government must disclose any information in those documents that would not involve national security. The District Court rejected this argument because "the entire document, not just the sensitive portion, is classified * * *."[32] We think the District Court erred.

This question turns on whether the "segregability" requirement of FOIA applies to the national security exception in Exemption 1. The segregability provision appears in Section 552(b), after all nine exemptions are listed:

> Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.[33]

Nothing in this passage suggests that it applies to the other eight exemptions but not to Exemption 1. Indeed, the first sentence of Section 552(b) refers to nondisclosure of "matters" that are exempt, not to entire "documents" that may be exempt. Moreover, the language of Exemption 1 itself provides no basis for the claim that the segregability principle should not apply to it.[34]

---

27. *E. g.,* S.Rep.No. 813, 89th Cong., 1st Sess. 3 (1965); S.Rep.No. 93–854, *supra* note 6, at 1, 6 (1974), Source Book, *supra* note 6, at 153, 158. *See United States Dep't of Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). This court stated in *Vaughn v. Rosen, supra* note 21, 157 U.S.App.D.C. at 347, 484 F.2d at 823, that the exemptions "must be construed narrowly, in such a way as to provide the maximum access consonant with the overall purpose of the Act." *See Mead Data Central, Inc. v. United States Dep't of Air Force, supra* note 6, 184 U.S.App.D.C. at 367, 566 F.2d at 259 ("Where there is a balance to be struck, Congress and the courts have stacked the scales in favor of disclosure and against exemption."); *Consumers Union of U. S. v. Consumer Product Safety Com'n,* 192 U.S.App.D.C. 93, 98, 590 F.2d 1209, 1214 (1978), *cert. granted,* —— U.S. ——, 99 S.Ct. 2158, 60 L.Ed.2d 1043 (1979).

28. 5 U.S.C. § 552(b) (1976). *See Vaughn v. Rosen, supra* note 21, 157 U.S.App.D.C. at 345, 484 F.2d at 825 ("[T]he agency may not sweep a document under a general allegation of exemption * * *. It is quite possible that part of a document should be kept secret while part should be disclosed."); *Mead Data Central, Inc. v. United States Dep't of Air Force, supra* note 6, 184 U.S.App.D.C. at 318, 566 F.2d

at 260 ("The focus of FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material.").

29. *See Schwartz v. Internal Revenue Service, supra* note 21, 167 U.S.App.D.C. at 304–305, 511 F.2d at 1306–1307; *Ackerly v. Ley,* 137 U.S.App.D.C. 133, 138–139, 420 F.2d 1336, 1341–1342 (1969).

30. 5 U.S.C. § 552(b)(1) (1976). *See* Poptanich Affidavit, Exhibits, Vol. II, at 508–509 (citing Executive Order 11652, 8 Weekly Compilation of Presidential Documents 545 (March 8, 1972)). For the text of Exemption 1 *see* note 34 *infra.*

31. Exhibits, Vol. II, at 509.

32. JA 76.

33. 5 U.S.C. § 552(b) (1976).

34. In terms, Exemption 1 permits nondisclosure of matters that are:

> (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

5 U.S.C. § 552(b)(1) (1976).

The legislative history strongly supports our interpretation of the statutory language. In the 1974 Amendments to FOIA Congress both revised Exemption 1 and inserted the segregability provision.[35] In the original Senate bill segregability applied only to "records otherwise exempt under clauses (1) and (7) [Exemptions 1 and 7] of this subsection."[36] So the initial proposal was to apply segregability to only two exemptions, *including Exemption 1*. The final legislation, according to the Senate Report, was designed to "*apply the deletion principle to all exemptions*."[37] Consequently, we conclude that the Government must segregate all material in classified documents that may be disclosed without danger to national security.[38]

■ It is important to note, however, that under the 1974 Amendments a court should "accord substantial weight" to an agency affidavit claiming Exemption 1's protection for requested material.[39] Although this legislative instruction creates some tension with the court's duty in FOIA cases to undertake *de novo* review, we believe that these potentially conflicting obligations can be harmonized on a case-by-case basis. In this litigation Exemption 1 was properly invoked to protect the identities of agents with sensitive assignments. Nevertheless, the record is ambiguous as to whether the documents contain other material that would not be exempt from disclosure.[40] On remand the FBI should advise the District Court on this matter, and if other segregable information is included in the three documents, the court must weigh any additional claim of exemption by the Government.[41]

■ EXEMPTION 3—The Government claimed this exemption, which covers material "specifically exempted from disclosure" by other statutes,[42] for three documents that were produced in another litigation. The trial court in the other suit issued a protective order sealing those documents under Rule 26(c) of the Federal Rules of Civil Procedure.[43] We do not agree with

35. S.Rep. 93–854, *supra* note 6, at 58, Source Book, *supra* note 6, at 210.

36. *Id.* at 32, Source Book, *supra* note 6, at 184.

37. *Id.* (emphasis added). Both the Supreme Court and this court have ruled that the Senate Report is a reliable indicator of congressional intent on the 1974 Amendments. *United States Dep't of Air Force v. Rose, supra* note 27, 425 U.S. at 365–367, 96 S.Ct. 1592 (quoting *Vaughn v. Rosen,* 173 U.S.App.D.C. 187, 193, 523 F.2d 1136, 1142 (1975)). *Cf. Jordan v. United States Dep't of Justice,* 192 U.S.App.D.C. 144, 173–175, 591 F.2d 753, 782–784 (1978) (*en banc*) (Leventhal, J., concurring); *id.* at 176–187, 591 F.2d at 785–796 (MacKinnon, J., dissenting).

38. *Mead Data Central, Inc. v. United States Dep't of Air Force, supra* note 6, offers a useful discussion of how segregability should work in practice:

> [I]f only ten percent of the material is non-exempt and it is interspersed line-by-line throughout the document, an agency claim that it is not reasonably segregable * * might be accepted. On the other extreme, if a large proportion of the information in a document is non-exempt, and it is distributed in logically related groupings, the courts should require a high standard of proof for an agency claim that the burden of separa-

> tion justifies nondisclosure or that disclosure of the non-exempt material would indirectly reveal the exempt information. * * *

> 184 U.S.App.D.C. at 369, 566 F.2d at 261 (footnote omitted).

39. H.R.Rep.No. 93–1380, 93d Cong., 2d Sess. 10 (1974), Source Book, *supra* note 6, at 229.

40. The relevant portion of the Poptanich Affidavit states that each of the three documents "contains a list of individuals assigned to our Washington, D. C. Field Office, responsible for and engaging in authorized electronic surveillance." Exhibits, Vol. II, at 509. The affidavit is silent as to other contents of the documents.

41. If the Government's submissions are unconvincing, the District Court may undertake *in camera* inspection of the documents under the 1974 Amendments. H.R.Rep.No. 93–1380, *supra* note 39, at 10, Source Book, *supra* note 6, at 229. *See Ray v. Turner, supra* note 6, 190 U.S.App.D.C. at 309–317, 587 F.2d at 1206–1214 (Wright, C. J., concurring).

42. 5 U.S.C. § 552(b)(3) (1976).

43. *Founding Church of Scientology v. Saxbe,* D.D.C. Civil Action No. 74–744 (Jan. 23, 1976). The documents include depositions of FBI agents that have never been made public.

the implicit conclusion of the District Court that Rule 26(c) is a "statute" for the purposes of Exemption 3.

Exemption 3 is explicitly confined to material exempted from disclosure "by statute," and the Federal Rules of Civil Procedure simply do not satisfy this description. They are issued by the Supreme Court under rulemaking powers delegated by Congress.[44] Although proposed rules may be rejected by Congress, they are not affirmatively adopted by the legislature, as all statutes must be.[45]

In addition, the rule's standards for issuing protective orders do not comport with the criteria set forth in Exemption 3. The exemption, as amended,[46] applies to statutes that:

> (A) require[ ] that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establish[ ] particular criteria for withholding or refer[ ] to particular matters to be withheld[.] [47]

Rule 26(c) authorizes the court to issue an order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense * * *." [48] Since the District Court has broad discretion under the rule, nondisclosure of material under court seal could not be based on subsection (A) of Exemption 3. In addition, we do not think that the standards laid out in Rule 26(c)— "annoyance, embarrassment, oppression, or undue burden or expense"—either establish

"particular criteria for withholding [information]" or refer to "particular types of matters to be withheld," as required by subsection (B) of Exemption 3.

Finally, we believe that the interests guarded by protective orders are not endangered by our refusal to approve automatic nondisclosure of such material under Exemption 3. A Rule 26(c) order is issued to avoid injury in the context of a particular suit between particular litigants. Whether such harm will arise from disclosure of the material in a later FOIA suit is an entirely different question from that which faced the court that issued the protective order. Circumstances change, as may the interests of the parties involved in the original litigation. If the concerns behind the protective order are still valid at the time of the later FOIA action, nondisclosure may be approved under the Act's substantive exemptions.[49] Consequently, we see no basis for expanding Exemption 3 to cover Rule 26(c) orders as well as statutes.[50]

■ EXEMPTION 5—The FBI claimed this exemption, which applies to internal advisory memoranda and attorney work-product, "approximately twenty-five times." [51] The District Court upheld the FBI's use of the exemption in the following passage:

> [T]he government's generous disclosure of intra-agency memos in File K manifests its good faith. There is no reason for insistence that the defendants further justify withholding the remainder guarded by Exemption 5.[52]

---

44. See 28 U.S.C. § 2072 (1976).

45. *Id. See Walko Corp. v. Burger Chef Systems,* 180 U.S.App.D.C. 306, 309 n.29, 554 F.2d 1165, 1168 n.29 (1977).

46. Congress acted to restrict Exemption 3 in response to the Supreme Court's expansive reading of it in *FAA Administrator v. Robertson,* 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975). *See* H.R.Rep.No. 94–1441, 94th Cong., 2d Sess. 25 (1976) (Conference Report of Government in the Sunshine Act, Pub.L.No. 94 409, § 5(b), 90 Stat. 1247 (1976)).

47. 5 U.S.C. § 552(b)(3) (1976).

48. Fed.R.Civ.P. 26(c).

49. *E.g.,* 5 U.S.C. § 552(b)(6) (1976) (personal privacy); *id.* § 552(b)(7) (confidentiality needs of law enforcement agencies).

50. With respect to the particular documents involved in this issue, the District Court on remand might consider whether they fall within the definition of agency "records" under 5 U.S.C. § 552(a)(3) (1976).

51. JA 77.

52. *Id.*

The most likely interpretation of this holding is that the District Court applied a sort of "substantial compliance" test and concluded that, since the FBI had released many other intra-agency memoranda, the court need not inquire further with respect to these 25 documents. We cannot endorse such an approach to Exemption 5 questions or to FOIA issues in general. The Government cannot discharge its duty under FOIA by releasing most of the requested material. Exemption 5 directs that material in advisory opinions and memoranda need not be disclosed unless it is factual rather than advisory, or it concerns policies that have been adopted by the agency.[53] The District Court in this case must assure itself that nondisclosure of the internal documents satisfied the requirements of this exemption.[54]

Accordingly, the order of the District Court is reversed and this case is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

---

53. *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151–152, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Mead Data Central, Inc. v. United States Dep't of Air Force, supra* note 6, 184 U.S.App.D.C. at 364, 566 F.2d at 256; *Schwartz v. Internal Revenue Service, supra* note 21, 167 U.S.App.D.C. at 303, 511 F.2d at 1305.

54. Appellant also argues that the District Court erred in not ordering disclosure of documents in FBI files that were originally prepared by other agencies. Under FOIA an agency may take ten extra days in responding to a document request when it must consult with an originating agency on whether a requested document should be released. 5 U.S.C.

§ 552(a)(6)(B) (1976). But the agency that received the initial FOIA request retains responsibility for producing the document. We do not disturb the District Court's ruling on this point, however, because FOIA litigation has been brought by appellant or organizations closely related to appellant against the originating agencies involved here. Exhibits, Vol. I, at 44–45. Consequently, the issues surrounding disclosure of material originating in those agencies may be better resolved in the other suits. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).