**BRITISH AIRPORTS AUTHORITY,**
**Plaintiff,**

v.

**CIVIL AERONAUTICS BOARD,**
**Defendant.**

Civ. A. No. 81–1072.

United States District Court,
District of Columbia.

Jan. 14, 1982.

Joseph W. Dorn and Paul T. Michael, Washington, D. C., for plaintiff.

Scott T. Kragie, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM

GASCH, District Judge.

Plaintiff British Airports Authority (BAA) brings this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976), to compel the Civil Aeronautics Board (CAB) to release certain documents relating to airport user fees[1] charged by plaintiff[2] for use of airports in the United Kingdom. Although defendant released certain documents in response to plaintiff's administrative FOIA request, three classes of documents remain in dispute: (1) a 2 page intra-agency memorandum prepared by Joseph R. Chesen, a Senior Transportation Industry Analyst for CAB, describing an inter-agency meeting on BAA user fees attended by Mr. Chesen; (2) 25 pages of handwritten notes prepared by Mr. Chesen relating to various aspects of BAA user fees; and (3) 35 Department of State documents received by Mr. Chesen in the course of inter-agency discussions regarding the United States' position in bilateral talks with the British Government on BAA user fees. Defendant asserts various exemptions to justify its refusal to disclose each of these classes of documents. As to the first class, the CAB contends that the 2 page memorandum is exempt under FOIA exemption 5 as an intra-agency memorandum that would not be "available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5), un-

---

1. A "user fee" is a charge levied on an air carrier for the right to use an airport. *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment at 2 [cited subsequently as Plaintiff's Memorandum].

2. Plaintiff BAA is a corporate body established by an act of the Government of the United Kingdom to provide services and facilities at certain British airports. The BAA has the "power to do anything which is calculated to facilitate the discharge of its duties", including the power to assess airport user fees. *See* Plaintiff's Memorandum at 2; Plaintiff's Supplemental Brief in Support of Cross-Motion for Summary Judgment at 1.

der exemption 3 as material specifically exempted from disclosure by section 1104 of the Federal Aviation Act of 1958, 49 U.S.C. § 1504 (1976), and, as to parts of the memorandum, under exemption 4 as "trade secrets and commercial or financial information obtained from a person and privileged or confidential," 5 U.S.C. § 552(b)(4). As to the second class of documents, defendant's primary argument is that the 25 pages of handwritten notes prepared by Mr. Chesen are not agency documents within the meaning of the FOIA, but rather are the personal property of Mr. Chesen and, hence, not subject to disclosure under the FOIA. In the alternative, defendant asserts that all but one of these 25 pages, if deemed agency documents, are properly withheld under exemptions 3, 4, and 5 for reasons essentially the same as those asserted with regard to Mr. Chesen's 2 page memorandum. Finally, as to the third class of disputed documents, defendant contends that the 35 State Department documents are not within the control of the CAB because the CAB lacks both the authority to release them and the knowledge and information necessary to evaluate whether they are properly disclosable under the FOIA. In light of these facts, and because the CAB referred this part of plaintiff's FOIA request directly to the State Department for that agency's resolution, defendant argues that this Court is without jurisdiction to compel the release of these documents. All of these contentions by defendant are supported by an 8 page *Vaughn* affidavit filed by Mr. Chesen. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *cf. Goland v. CIA*, 607 F.2d 339, 351 (D.C.Cir.1978) (noting that the sufficiency of a particular *Vaughn* index is determined under the facts and circumstances of each case), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). Because the Court finds defendant's *Vaughn* affidavit more than adequate to conduct a reasoned *de novo* judicial determination and to enable plaintiff to participate meaningfully in the adjudicatory process, *see Vaughn v. Rosen*, 484 F.2d at 824–26, and because the Court

determines that the documents are indeed properly withheld, summary judgment will be entered for defendant as to the first category of documents and the complaint dismissed for lack of jurisdiction as to the last two categories of documents.

## I. BACKGROUND.

Plaintiff BAA is a corporate entity set up pursuant to British statute and responsible for the establishment and collection of fees imposed upon users of airports in the United Kingdom, including U.S. airlines. *See* note 2 *supra*. The United Kingdom and the United States have been parties to a continuing series of bilateral negotiations concerning these user fees. *See* Affidavit of Joseph R. Chesen, ¶¶ 1, 3, 4 (dated July 13, 1981) [cited subsequently as Chesen Aff.]. In preparation for these negotiations, the CAB has engaged in inter-agency consultations with the State Department, the Federal Aviation Administration (FAA), and the Department of Transportation to develop the United States' position and strategies in the bilateral negotiations with the United Kingdom. In addition, certain U.S. airlines have participated in some of the inter-agency discussions. These U.S. airlines, specifically Pan American World Airways (Pan Am) and Trans World Airlines (TWA), also have filed suit in the United Kingdom against the BAA to challenge the validity of certain user fees assessed against them.

Defendant's *Vaughn* affiant, Mr. Chesen, has represented the CAB both in the inter-agency consultations described above and in the bilateral United States-United Kingdom negotiations over user fees. Chesen Aff. ¶ 1. By virtue of this role, Mr. Chesen either has created or obtained copies of all the documents at issue in the present case. *See* Chesen Aff. ¶¶ 1, 6, 7.

The first category of documents consists of a single, 2 page intra-agency memorandum dated June 5, 1980, from Mr. Chesen to five senior CAB officials. The memorandum reports on a June 4, 1980, inter-agency meeting among officials from CAB, State, and Transportation, at which representa-

tives from Pan Am and TWA also were present. The meeting was one of a number of inter-agency meetings held to discuss the BAA user fee negotiations. The memorandum relates to two topics discussed at the June 4th meeting: (1) options available to U.S. carriers to seek redress of their grievances over user fees imposed by BAA; and (2) alternative stategies and tactics that the United States might pursue in the bilateral negotiations. According to Mr. Chesen's affidavit, he prepared the memorandum to assist senior CAB officials to carry out their responsibility to develop and recommend United States' policy on the user fee issue. Chesen Aff. ¶ 3.

The second category of documents consists of 25 pages of personal, handwritten notes taken by Mr. Chesen during the course of the inter-agency consultations and bilateral negotiations discussed above. According to Mr. Chesen's affidavit, these notes record his impressions of the particular points made, and positions adopted by, the various participants at these meetings. He states that he prepared the notes solely to assist him in preparing oral and written reports for other CAB officials and that he has never disclosed them to anyone other than the Government attorneys handling this FOIA case. The notes have at all times been kept in Mr. Chesen's personal office files. Chesen Aff. ¶ 5(b).

The final category of documents consists of 35 State Department documents received by Mr. Chesen during the course of inter-agency consultations on the issue of British airport user fees. In responding to plaintiff's BAA's FOIA request for these documents, defendant followed longstanding CAB policy, adopted pursuant to guidance from previous FOIA memoranda circulated by the United States Attorney General,[3] and referred the request directly to the State Department, the generating agency. The CAB followed this procedure because the 35 documents in question were generated by State and were subject to State's

classification/declassification authority. Chesen Aff. ¶ 6. After referral, State responded directly to the BAA's request by providing copies of some of the documents, but denying access to all or part of twenty-five of the documents. *See* Letter from Thomas W. Ainsworth, Director, Mandatory Review, Department of State Bureau of Administration, to Joseph W. Dorn, Counsel for British Airports Authority (April 22, 1981); note 7 *infra*. As to the documents withheld, State informed BAA that an appeal to the Assistant Secretary of State could be filed within 60 days. Apparently, BAA did not pursue this avenue of appeal, but instead continued to pursue these documents through the CAB.

DISCUSSION

■ As an initial matter, the Court rejects plaintiff's contention that defendant's *Vaughn* affidavit, submitted on behalf of the CAB by Mr. Chesen, is in some way insufficient to support the exemptions claimed for the documents at issue. The Court has read Mr. Chesen's *Vaughn* affidavit with care and concludes that the document fully comports with the requirements established by *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), and its progeny, *see, e.g., Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 861 (D.C. Cir.1980); *Founding Church of Scientology, Inc. v. Bell*, 603 F.2d 945, 949 (D.C.Cir.1979) (per curiam).

As stated by our Court of Appeals on numerous occasions, a principal purpose of a *Vaughn* index is "to facilitate court review of agency FOIA rulings by making clear the basis for the agency's refusal to release certain information." *Founding Church of Scientology, Inc. v. Bell*, 603 F.2d at 948; *see Coastal States Gas Corp. v. DOE*, 617 F.2d at 861 (noting that "conclusory assertions of privilege will not suffice to carry the Government's burden of proof in defending FOIA cases"). The court in *Found-*

---

**3.** *See* U.S. Dept. of Justice, Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act (June 1967) [cited subsequently as Attorney Gener-

al's 1967 Memorandum]; U.S. Dept. of Justice, Attorney General's Memorandum on the 1974 Amendment to the FOIA (Feb. 1975).

*ing Church of Scientology* went on to specify the particular attributes of an adequate *Vaughn* index:

(1) The index should be contained in one document, complete in itself.

(2) The index must adequately describe each withheld document or deletion from a released document.

(3) The index must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant. Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA.

603 F.2d at 949. Under the circumstances of this case, the Court concludes that defendant's *Vaughn* affidavit satisfies all three of the criteria identified above. *See Goland v. CIA*, 607 F.2d 339, 351–52 (D.C. Cir.1978) (finding that an affidavit filed by CIA counsel satisfied the *Vaughn* requirements of "detailed justification," "specificity," and "separation"), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). First, the *Vaughn* affidavit consists of one document, prepared by an agency official with intimate knowledge of the nature of the information at issue in this suit. Second, the Court finds that Mr. Chesen's affidavit adequately describes each of the documents withheld by defendant, without at the same time disclosing precisely the information defendant claims is exempt. *See Goland v. CIA*, 607 F.2d at 352. Third and finally, the affidavit states clearly which exemptions are relied upon for each document withheld and explains with particularity the reasons why the claimed exemptions are relevant.[4] In sum, therefore, the Court rejects plaintiff's claim that defendant's *Vaughn* affidavit is insufficient to permit a reasoned judgment as to wheth-

er the withheld materials are properly exempt under the FOIA. Accordingly, the Court will proceed to the merits of defendant's justifications for nondisclosure of the materials in question.

*Chesen's 2 page memorandum*

■ The CAB contends that this document is properly exempt under exemptions 3 and 5, in total, and under exemption 4, in part. Exemption 3 permits agencies to withhold any documents that another statute of Congress has specifically exempted from disclosure. 5 U.S.C. § 552(b)(3). To qualify for exemption 3 status, however, a "withholding statute" must either (1) "require" that matters be withheld "in such a manner as to leave no discretion on the issue" or (2) "establish particular criteria for withholding" or "refer to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3) (Supp.1980). Defendant contends that section 1104 of the Federal Aviation Act of 1958, 49 U.S.C. § 1504 (Supp. 1980), constitutes a withholding statute under which the CAB must withhold this 2 page memorandum. Section 1104 of the Act states that information obtained by the CAB

*shall* be withheld from public disclosure by the Board . . . if disclosure of such information would prejudice the formulation and presentation of positions of the United States in international negotiations or adversely affect the competitive position of any air carrier in foreign air transportation.

49 U.S.C. § 1504 (Supp.1980) (emphasis added). Defendant's argument is that the term "shall" in section 1104 eliminates any discretion the CAB might have to release certain information once the agency determines that disclosure would prejudice the position of the United States in international negotiations or adversely affect the competitive position of any air carrier.

---

**4.** Given the nature of the material withheld (other than the State Department documents which are withheld on other than exemption grounds), the Court also agrees with the CAB that the documents are not divisible into rea-

sonably segregable portions for purposes of FOIA analysis. *See* Chesen Aff. ¶¶ 3(f), 5(f). Consequently, the Court will treat the documents withheld as either exempt in their entirety or not.

The Court agrees with defendant's analysis and concludes that section 1104 constitutes an exemption statute under the FOIA. The use of the word "shall" by Congress demonstrates an intent to remove discretion from the CAB and to require that information be withheld if disclosure would produce the adverse consequences specified in section 1104. Consequently, once the CAB, the agency with the necessary expertise in these matters, determines that the threshold of adverse effect is met, section 1104's prohibition on disclosure is applicable and the information must be withheld.

The Court next must determine whether defendant has adequately established that Mr. Chesen's 2 page memorandum falls within the scope of section 1104 and, hence, within the scope of exemption 3; the Court concludes that defendant has satisfied this burden. Mr. Chesen's 2 page memorandum falls within section 1104 because, as stated in the Chesen affidavit, the memorandum addresses only "options available to U.S. carriers" and "negotiating strategies and tactics" of the United States Government regarding the BAA user fees issue. Chesen Aff. ¶ 3(d), (e). Mr. Chesen's uncontradicted affidavit establishes that neither the United Kingdom nor British carriers have revealed their strategic considerations regarding user fees. Chesen Aff. ¶ 3(d). Consequently, Mr. Chesen, the agency official with perhaps the most intimate knowledge of the user fee issue, concludes that disclosure of either the United States' negotiating strategy or the U.S. airlines' perceived options would, in the words of section 1104, "prejudice . . . the position of the United States in international negotiations or adversely affect the competitive position of any air carrier in foreign air transportation."[5] In light of the CAB's acknowledged expertise in this area, the Court accepts Mr. Chesen's conclusions regarding the adverse effects that would ensue from disclosure of this document. The

record indicates that the BAA user fee charge is a hotly contested issue between the United States and the British governments. See Chesen Aff. ¶¶ 3, 5, 7. The CAB's conclusion that disclosure of its non-public negotiating strategies and ultimate goals would hamper, and perhaps frustrate, achievement of United States' policy on user fees is more than reasonable—it is compelling. A government engaged in serious bilateral negotiations over a rather contentious issue generally does not freely reveal its overall strategy and ultimate aims to the other side. The common sense reason, of course, is that to do so would undermine the achievement of those very aims. The Court therefore finds the entire 2 page Chesen memorandum properly withheld under section 1104 and exemption 3.

Although unnecessary in light of the above disposition of defendant's exemption 3 claim, the Court will nevertheless discuss defendant's second major ground for withholding the 2 page Chesen memorandum: exemption 5. Exemption 5 provides that an agency may withhold "inter-agency or intra-agency memorand[a] or letters which would not be available to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As stated by the Supreme Court, one of the purposes of this exemption is to protect the deliberative process in agencies so as to promote "open, frank discussion between subordinate and chief concerning administrative action." *EPA v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973) (quoting *Kaiser Aluminum & Chem. Corp. v. United States*, 157 F.Supp. 939, 946 (1958)); see *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975) (exemption 5 designed to protect the "process by which governmental decisions and policies are formulated") (quoting *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C.1966), *aff'd*, 384 F.2d

---

**5.** For this latter reason, defendant contends that any information in the memo regarding the possible *options* of U.S. carriers is properly exempt under exemption 4 as "commercial or financial information" and "privileged or confi-

dential." 5 U.S.C. § 552(b)(4). Although this argument has merit, the Court need not reach the issue because the broader grounds for nondisclosure under exemptions 3 and 5 are fully available. *See infra*.

979 (D.C.Cir.), *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967)). Mr. Chesen's affidavit offers adequate justifications for withholding this document under exemption 5. As stated in ¶ 3(c) of that affidavit, the memorandum

> sets forth confidential information intended to assist the Board in carrying out its responsibilities for taking or recommending actions to correct harmful effects of BAA airport user charges.... Release of the memorandum would have a chilling effect on the flow of information both within the Board and between the Board and other agencies involved with this problem.

Plaintiff counters with the argument that the memorandum is not truly a part of the deliberative process as required by exemption 5, *see Mead Data Central, Inc. v. Department of the Air Force*, 566 F.2d 242, 256 (D.C.Cir.1977), because defendant has not identified a particular "deliberative process" to which the document relates. In light of the uncontradicted facts stated in Mr. Chesen's affidavit, however, plaintiff's contention lacks merit. The deliberative process to which the memorandum relates, as established by the affidavit, is the United States Government's current efforts to formulate and implement a negotiating strategy regarding British airport user fees. The Court concludes, therefore, that the memorandum is properly exempt under exemption 5 because of its integral relationship to the United States' formulation of policy on BAA user fees.

### The 25 pages of notes

Defendant's primary justification for withholding these 25 pages of Mr. Chesen's personal handwritten notes is that these materials do not constitute "agency records" subject to the disclosure provisions of the FOIA. Rather, the CAB contends, these notes constitute the personal professional property of Mr. Chesen, who created them "solely ... to refresh [his] recollection when helpful." Chesen Aff. ¶ 5(b). The notes embody only Mr. Chesen's personal recollection of various events and meetings he attended in his official capacity

at CAB. They are kept in Mr. Chesen's personal office file, are not created pursuant to any CAB directive or regulation, and are destroyed by Mr. Chesen upon the disposition of the issue or problem to which they relate. *Id.* Indeed, if these notes are ordered released under the FOIA. Mr. Chesen attests, he would not be likely to create similar notes in the future because of the possibility of compelled disclosure of his personal impressions; he would rather not commit these thoughts and impressions to paper if any litigant could force disclosure under the FOIA. *Id.* For these reasons, defendant argues that these materials do not fall within the scope of the term "agency records" for the purposes of the FOIA.

■ As the Supreme Court has noted, Congress did not define the term "agency records" as used in the FOIA. *See Forsham v. Harris*, 445 U.S. 169, 178, 100 S.Ct. 978, 984, 63 L.Ed.2d 293 (1980). Definition of the term is crucial to any FOIA analysis, however, because the Act "only prohibits the withholding of 'agency records.'" *Kissinger v. Reporter's Committee for Freedom of the Press*, 445 U.S. 136, 155, 100 S.Ct. 960, 971, 63 L.Ed.2d 267 (1980); *accord, Forsham v. Harris*, 445 U.S. at 178 & n.8, 100 S.Ct. at 983 & n.8. If a particular document does not constitute an agency record, the disclosure provisions of the FOIA are thus inapplicable. *Id.* 445 U.S. at 150, 100 S.Ct. at 968. In fact, the federal district courts lack jurisdiction under the FOIA to order the release of non-agency records. *Id.* (stating that one of the three prerequisites to federal court jurisdiction under the FOIA is that the subject matter of the suit concern agency records).

■ Based upon defendant's *Vaughn* affidavit, and in reliance upon the well-reasoned decision in *Porter County Chapter of the Izaak Walton League, Inc. v. AEC*, 380 F.Supp. 630 (N.D.Ind.1974), the Court concludes that these 25 pages of Mr. Chesen's personal, handwritten notes do not constitute "agency records" for the purposes of the FOIA. A number of factors lead the Court to this conclusion. Of primary significance is the personal nature of these docu-

ments: Mr. Chesen need not have created them, intended them to be temporary, not permanent, and kept them within his own personal files, with no intent to distribute them through normal agency channels. Chesen Aff. ¶ 5(b). In rejecting a FOIA request for documents of a nature similar to those at issue in this suit, the *Porter County* court stated:

> In executing their responsibilities relating to the AEC's health and safety and environmental reviews, individual AEC staff members frequently prepare assorted handwritten materials for their own use. Such materials are not circulated to nor used by anyone other than the authors, and are discarded or retained at the author's sole discretion for their own individual purposes in their own personal files. The AEC does not in any way consider such documents to be "agency records," nor is there any indication in the record that anyone other than the author exercises any control over such documents.

380 F.Supp. at 633. For these reasons, and because of the adverse effect compelled disclosure might have on the day-to-day work routines of agency officials, the *Porter County* court went on to conclude that individual handwritten notes of this nature are not agency records within the purview of the FOIA:

> [The] Court finds that these materials are *personal notes, rather than agency records.* Disclosure of such personal documents would invade the privacy of and impede the working habits of individual staff members; it would preclude employees from ever committing any thoughts to writing which the author is

unprepared, for whatever reason, to disseminate publicly.

380 F.Supp. at 633 (emphasis added). This Court agrees with both the rationale and the result of the *Porter County* decision and concludes that these personal notes, though prepared by Mr. Chesen during the course of his official duties at the CAB, are not the kind of documents to which Congress intended the FOIA to apply. To conclude otherwise would indiscriminately subject the personal notes, and perhaps even doodlings or jottings, of agency officials to compelled disclosure under the FOIA, regardless of the form, purpose, or use of the notes. This Court declines to attribute to Congress an intent to extend the term agency records to materials of this nature. Accordingly, the Court finds these documents outside the scope of the FOIA and, therefore, not subject to disclosure at plaintiff's insistence. *Cf. Forsham v. Harris*, 445 U.S. 169, 183 n.14, 100 S.Ct. 978, 986 n.14, 63 L.Ed.2d 293 (1980) (raising the possibility that government documents "not appropriate for preservation" by an agency may fall outside the definition of "agency records" under the FOIA) (dicta).[6] Because the Court lacks jurisdiction, the complaint will be dismissed as to this class of documents.

### The 35 Department of State documents

Defendant's sole argument in support of its refusal to release these 35 Department of State documents is that the documents are not within the control of the CAB, but of the State Department, and that, therefore, the State Department, not the CAB, is the proper agency from which to seek these materials. The basic premise underlying

---

**6.** The Court's resolution of the "agency records" issue renders unnecessary any extended discussion of defendant's alternative grounds for nondisclosure: exemptions 3, 4, and 5. The Court will briefly note for the record, however, its conclusion that 24 of the 25 pages of notes, if deemed "agency records" for the purpose of the FOIA, are properly withheld pursuant to exemptions 3 and 5 for the same reasons that Mr. Chesen's 2 page memorandum is properly withheld. *See* discussion *supra* at 413–415. The single page that falls outside the scope of these exemptions is the document that contains

a partial listing of the persons who attended an August 6, 1980, meeting concerning BAA user fees held at CAB's office. Chesen Aff. ¶ 5(a)(3). Because defendant claims no substantive exemption for this single document, disclosure under the FOIA would be mandated if the document constituted an agency record within the meaning of the statute. With regard to the other 24 pages, however, the Court would grant defendant summary judgment on the substantive exemption grounds noted above.

defendant's position is that these documents do not constitute "agency records" of the CAB disclosable under the FOIA from the CAB. Consistent with this position, therefore, defendant has followed the policy recommended by the Attorney General to handle FOIA requests for documents generated by another agency: the CAB referred plaintiff's request for State Department documents to the State Department for appropriate resolution by that agency. The State Department then processed plaintiff's request as if it had originally been submitted to that agency, releasing certain documents and withholding others.[7] Rather than challenge directly the State Department's determination that the documents withheld were properly exempt under the FOIA, however, plaintiff chose to institute this suit to compel disclosure of these very same materials from the CAB, an agency without intimate knowledge concerning the genesis of the documents or the reasons for State's refusal to disclose them. Under these circumstances, defendant argues, this Court lacks jurisdiction to order disclosure of these documents because they are not agency records of the CAB.

■ Based upon the circumstances of this case, the Court concludes that defendant has not improperly withheld agency documents within the meaning of the FOIA. *Cf. Kissinger v. Reporter's Committee for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980) (discussing the elements of district court jurisdiction under the FOIA). To the contrary, defendant followed accepted CAB procedure regarding documents in its possession that were generated by, and remained within the control of, another federal agency and referred the request directly to that generating agency, the State Department,

for its consideration. This practice of referral, though not explicitly endorsed by the language of the FOIA, has been approved by various federal courts that have considered its propriety. *See Westinghouse Elec. Corp. v. CIA*, Civil Action No. 79–0822, mem. at 6–8 (D.D.C. Feb. 11, 1980); *Weisberg v. CIA*, Civil Action No. 77–1997, mem. at 2–3 (D.D.C. Jan. 4, 1979), *aff'd*, No. 79–1729 (D.C.Cir. May 30, 1980) (unpublished); *Serbian Eastern Orthodox Diocese v. CIA*, Civil Action No. 77–1412, mem. at 2–3 (D.D.C. July 12, 1978); *cf. Crooker v. Department of State*, 628 F.2d 9, 10–11 (D.C.Cir.1980) (approving, *in dicta*, practice of referring FOIA requests to the agency that originated the pertinent documents). In sustaining a similar referral practice adopted by the CIA, all the district court decisions cited above held that the decision whether or not to release documents generated outside the CIA was properly for the originating agency to make. *See, e.g., Serbian Eastern Orthodox Diocese, supra*, mem. at 2–3 (noting that "agency with paramount interest should make disclosure decision") (citing Attorney General's 1967 Memorandum, *supra* note 3, at 24).

■ For a number of reasons, this Court agrees with the conclusion that the practice of referring FOIA requests to the originating agency is proper under circumstances of the kind present in this case and satisfies the non-originating agency's FOIA obligations. First, the practice is recommended by the Attorney General's office as the appropriate response to FOIA requests for records possessed by one agency, but generated by another. *See* Attorney General's 1967 Memorandum, *supra* note 3, at 24. The guidelines propounded by the 1967 Memorandum state:

---

7. The record indicates that, in response to its request, plaintiff received directly from the State Department 10 of the 35 State documents *in toto* and 2 with excisions. Of the remaining 23, the State Department withheld 13 *in toto* and determined that the other 10 had been reviewed and either released or withheld by State under a prior FOIA request filed by BAA with State. *See* Chesen Aff. ¶ 6(a), Exhibit A (Letter from Thomas W. Ainsworth, Department of State, to Joseph W. Dorn, counsel for BAA (dated April 22, 1981)). With regard to any documents withheld, either in total or in part, the State Department notified plaintiff of its right to appeal the initial negative determination administratively within State. *Id.* Plaintiff, however, declined to pursue this direct avenue of appeal within State, choosing instead to compel production of the documents from the CAB. *See* Chesen Aff. ¶ 6(a).

Where a record is requested which is of concern to more than one agency, the request should be referred to the agency whose interest in the record is paramount, and that agency should make the decision to disclose or withhold.... Where a record requested from an agency is the exclusive concern of another agency, the request should be referred to that other agency.

*Id., quoted with approval in Goland v. CIA,* 607 F.2d 339, 347–48 n.46 (D.C.Cir.1978).[8] Second, the practice is entirely consistent with the ultimate goal of the FOIA: to assure, as expeditiously as possible, the citizenry's access to non-exempt federal agency records. *See Crooker v. State Department,* 628 F.2d 9, 11 (D.C.Cir.1980). The agency that generated the documents is in the best position to determine swiftly and efficiently the propriety of disclosure. Duplication of that effort by an agency that has little or no interest in, or knowledge of, the requested documents, but that simply has possession of informational copies, would serve no purposes other than to delay a decision on the request and to waste already scarce agency resources. As noted by the court in the *Serbian Eastern Orthodox* decision, *supra,* in approving the referral of some 237 documents to the originating agencies:

[N]o purpose can be served by directing the requested agency to expend time and energy in preparing its own justification for withholding [documents originated outside that agency] .... No purpose will be served by forcing separate agencies of the Government to make numerous individual responses respecting a particular document; plaintiffs' interests are adequately protected by one thorough analysis of each document.

Mem. at 3. Finally, the referral of a FOIA request to the generating agency appears essential when, as in the present case, *see* Chesen Aff. ¶ 6(a), the requested documents fall within the generating agency's classification/declassification scheme. In these circumstances, only the agency with the authority to declassify any classified materials can respond fully to a party's FOIA request. *Cf. Serbian Eastern Orthodox Diocese, supra,* mem. at 2 (observing that "[a]pplicable government regulations require that an originating agency review documents before any declassification"). *See generally* Strickland & Wood, *Agency Processing of FOIA Requests for Records that it did not Originate,* Government Disclosure 7071–79 (Prentice Hall Oct. 13, 1981). A statement by the D.C. Circuit in the *Crooker* decision, though arising in another context, adds further support to this conclusion: "[T]he referral [of a FOIA request] to the originating agency was necessary because of the sensitive nature of the materials involved and the familiarity of the originator with the records and their nuances." 628 F.2d at 11. In the present case, the Court considers defendant's referral of these 35 State Department documents, which concern that agency's position on, and involvement with, the sensitive BAA user fees issue, to be similarly necessary for the prompt and thorough disposition of plaintiff's FOIA request. Plaintiff should have pursued its request directly from the State Department and exhausted its administrative remedies within that agency. Because plaintiff failed to do so, the Court will dismiss the complaint for lack of jurisdiction as to this category of documents as well.[9]

---

**8.** On this issue, the *Goland* court also cited approval an administrative decision, *Friendly Broadcasting Co.,* 55 F.C.C.2d 775, 775–76 (1975), that ordered referral of a FOIA request to another agency. 607 F.2d at 347–48 n.46. In *Friendly Broadcasting,* the Federal Communications Commission (FCC) ruled that FBI Reports loaned to the FCC solely for internal reference purposes were "property of the [FBI]" and that the FBI, "as the originator of the Reports, ... [was] the agency to which the request should be addressed" under the FOIA.

607 F.2d at 648 n.46 (quoting 55 F.C.C.2d at 775–76). The citation thus further supports this Court's conclusion that referral is an appropriate agency response under certain circumstances.

**9.** The Court's decision to approve the CAB's referral practice in this case is further buttressed by its conclusion that these documents, though in the CAB's possession, are not within the CAB's control under the circumstances of this case. *See Goland v. CIA,* 607 F.2d at 345.

An appropriate order disposing of all aspects of this case accompanies this memorandum.

## ORDER

Upon consideration of the parties' cross-motions for summary judgment, the memoranda in support and opposition, the defendant's *Vaughn* affidavit, the arguments of counsel at the hearing on this matter, and the entire record, it is by the Court this 14th day of January, 1981.

ORDERED that defendant's motion for summary judgment be, and hereby is, granted; and it is further

ORDERED that plaintiff's motion for summary judgment be, and hereby is, denied; it is further

ORDERED that summary judgment be, and hereby is, entered in favor of defendant and against plaintiff; and it is further

ORDERED that, with regard to plaintiff's requests for the 25 pages of Mr. Chesen's personal notes and for the 35 Department of State documents, the complaint be, and hereby is, dismissed for lack of jurisdiction.

---

Rather, these materials remain within the control of the originating agency, the State Department. *See* Chesen Aff. ¶ 6. As stated by Mr. Chesen, he received these State Department documents during the course of inter-agency consultations, but "neither [he] nor the [CAB] are authorized to disseminate these materials." Chesen Aff. ¶ 6(b). Furthermore, neither he nor the CAB possess the "knowledge or information necessary to evaluate" the propriety of releasing these State Department documents under the FOIA. *Id.* Because of this fact, defendant necessarily does not consider these documents "property subject to the free disposition" of the CAB. *Goland v. CIA*, 607 F.2d at 347. In sum, therefore, the Court also agrees with defendant's argument that, "under all of the facts of the case," *id.*, these 35 State Department documents have not passed from the control of the State Department to the control of the CAB.