Scott **ARMSTRONG**, National Security Archive, American Historical Association, American Library Association, Center for National Security Studies, Eddie Becker,

and

Gary M. Stern, Plaintiffs,

v.

**EXECUTIVE OFFICE OF THE PRESIDENT**, Office of Administration, The National Security Council, White House Communications Agency,

and

Don Wilson, Archivist of the United States, Defendants.

Civ. A. No. 89–0142 CRR.

United States District Court, District of Columbia.

Aug. 29, 1995.

Lucinda A. Sikes, Michael E. Tankersley, and Alan B. Morrison, attorneys, Public Citizen Litigation Group, Washington, DC, for plaintiffs.

Jason R. Baron, David J. Anderson, and Elizabeth A. Pugh, attorneys, Department of Justice, Washington, DC, along with Frank M. Hunger, Assistant Attorney General, and Eric H. Holder, Jr., United States Attorney, for defendants.

## I. *INTRODUCTION*

Before the Court are two issues arising from this Court's earlier Memorandum Opinion of July 28, 1995. That Opinion sought to resolve the last remaining issues in this now six-year-old case,[1] namely, the Plaintiffs'

---

1. For a further discussion of the procedural history of this case, see *Armstrong v. Executive Office of the President,* 877 F.Supp. 690 (D.D.C. 1995).

claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See* Plaintiffs' Third Amended Complaint (dated Nov. 28, 1992) ¶¶ 37–39 (Count I); *see also* Plaintiffs' Memorandum of Points and Authorities (dated Apr. 10, 1995) at 1–2 ("At this stage, the only issues remaining ... concern the validity of defendants' claims that they are entitled to withhold certain information under certain exemptions to the FOIA....").

The Plaintiffs now move this Court to reconsider its decision not to conduct an *in camera* review of several documents. That Motion shall be denied. In addition, the Defendants have submitted a Supplemental Memorandum setting forth their effort to comply with this Court's Order that they reprocess eighty-eight White House Intelligence Summaries. On the basis of that Memorandum and the Defendants' supplemental filings, the Court will grant Summary Judgment in favor of the Defendants as to those Summaries.

## II. THE DEFENDANTS ARE NOT ENTITLED TO RECONSIDERATION OF THIS COURT'S DECISION NOT TO REVIEW FOURTEEN DOCUMENTS IN CAMERA

Initially before the Court is the Plaintiffs' Motion for Partial Reconsideration (dated Aug. 7, 1995) of this Court's Memorandum Opinion of July 28, 1995. Among other things, the Opinion ordered the Government to produce for *in camera* review four of seventeen documents identified by the Plaintiffs.[2] Mem. Op. at 9–12, 36. By their Motion, the Plaintiffs now request that the Court reconsider its decision not to conduct an *in camera* review of the remaining thirteen documents, focusing on four documents in particular (Plaintiffs' Exhibits B–1, B–2, B–3, and B–5). *See* Plaintiffs' Motion for Partial Reconsideration at 6. For the reasons set out below, as well as those originally

articulated in the Memorandum Opinion, the Plaintiffs' Motion shall be denied.

### A. BACKGROUND

Pursuant to the FOIA, Count I of the Plaintiffs' Complaint requested production of various electronic records created by the staff of the Executive Office of the President ("EOP") and stored on the Professional Office Systems ("PROFS") of the National Security Council and the EOP. *See* Plaintiffs' Third Amended Complaint ¶¶ 37–39. In response, the Defendants prepared *Vaughn* indices setting forth various exemption claims for those records. After the Plaintiffs' submission of their Cross–Motion and Opposition for Summary Judgment, however, the Defendants again reviewed many of the contested documents and, concluding that in some instances the Plaintiffs were correct, proceeded to release additional information. *See* Third Declaration of David S. Van Tassel (appended to Defendants' Reply Memorandum [May 3, 1995] as exh. 4) *passim.*

The Defendants declined, however, either to release or to reveal further the contents of the seventeen records now relevant. The Plaintiffs then moved the Court to review those documents *in camera* based on their concern over whether "the government has corrected all its errors and it [sic] claims are, at last, legitimate." Plaintiffs' Reply Memorandum (May 16, 1995) at 5. The "[P]laintiffs maintain that the numerous errors in the *Vaughn* index show 'carelessness,' 'sloppy review,' and a general lack of due diligence." Plaintiffs' Motion for Partial Reconsideration at 2; *see also id.* at 5. Given this alleged carelessness, the Plaintiffs maintain that absent *in camera* review the Court cannot be certain that the Government has correctly characterized the disputed documents as exempt from further disclosure.

In opposition, the Defendants assert that the Court in its July 28, 1995 Memorandum Opinion considered each disputed record and conducted a "careful evaluation under this Circuit's standard for review, on a document by document basis, of whether defendants'

---

**2.** The Court reviewed the four documents *in camera* on August 7, 1995 and concluded that the Defendants had properly redacted or exempted them from disclosure. Order of Aug. 11, 1995, No. 89–142 (Richey, J.).

public *Vaughn* index and supporting papers were plausible, were reasonably specific within the scope of the claimed exemptions, and were not otherwise contradicted by other evidence of record." Defendants Memorandum in Opposition at 4. Upon careful consideration of the pleadings extant and the entire record herein, the Court must agree with the Defendants.

## B. *DISCUSSION*

■ As a preliminary matter, the Court notes that the Plaintiffs have failed to set forth either a Rule of Civil Procedure or a standard of review through which they wish to have their Motion reviewed. Given the Motion's timing and the requested relief, it will be deemed submitted as a Rule 59(e) Motion to Alter or Amend a Judgment. *See Nichols v. Board of Trustees*, 835 F.2d 881, 887 (D.C.Cir.1987) ("[R]egardless of the way a caption characterizes a motion, a post-judgment filing challenging the correctness of the judgment falls within Rule 59(e)'s perimeter.").

"A motion for reconsideration is discretionary"; "[t]he primary reasons for reconsideration of judgment are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *National Trust v. Department of State*, 834 F.Supp. 453, 455 (D.D.C.1993) (Order) (quoting *Virgin Atlantic Airways v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992)), *aff'd in part and rev'd in part on other grounds sub nom. Sheridan Kalorama Historical Ass'n v. Christopher*, 49 F.3d 750 (D.C.Cir.1995). Given that the Plaintiffs have identified no intervening change of controlling law, no new evidence, and no manifest injustice, the Court is left to presume that the Plaintiffs view the July 28, 1995 Memorandum Opinion as infected by clear error.

■ In that vein, they assert that the Opinion "mischaracterize[d] plaintiffs' argument as being based on allegations of 'bad faith'" on behalf of the Government. Plaintiffs' Motion for Partial Reconsideration at 1. They argue that their position, properly understood, is that the Defendants exhibited a "general lack of due diligence" (as opposed to any evil motive), suggesting that the Court should not have deferred to the Government's exemption determination. *Id.* at 2. Upon review of the pleadings and the record in this matter, the Court finds the Plaintiffs' position just as unavailing today as it was on July 28.

■ As the Memorandum Opinion discussed, this Circuit will not lose faith in a FOIA exemption determination based on the Government's concession that it had earlier misclassified related materials. That Opinion quoted from *Military Audit Project v. Casey*, 656 F.2d 724 (D.C.Cir.1981), wherein the Court of Appeals stated:

> By releasing information to us, argue the appellants, *the agency admitted that it was initially in error, from which it follows that the agency is fallible, and its affidavits, suspect....*
>
> *We emphatically reject this line of argument.* If accepted, it would work mischief in the future by creating a disincentive for an agency to reappraise its position, and when appropriate, release documents previously withheld. It would be unwise for us to punish flexibility, lest we provide the motivation for intransigence.
>
> Furthermore, this argument is based on the perverse theory that a forthcoming agency is less to be trusted in its allegations than an unyielding agency.... We find the agency's case strengthened by the massive declassification of documents it undertook at the appellants' behest.

*Id.* at 754 (emphasis added; footnote omitted); *accord Meeropol v. Meese*, 790 F.2d 942, 952 (D.C.Cir.1986), discussed *infra*.

The Plaintiffs attempt to distinguish *Military Audit Project* on the ground that in that case "the release of additional information was due to a change in national security policy and *not*, as here, because plaintiffs demonstrated that the government's *Vaughn* index contained multiple errors and that its exemption claims were untenable." Plaintiffs' Motion for Partial Reconsideration at 5

n. 2; *see also* Plaintiffs' Reply Memorandum at 5 n. 3. The Court finds, however, that the Plaintiffs have misread the *Military Audit Project* decision.

In *Military Audit Project*, the Government elected to release 2000 pages of materials relating to the Glomar Explorer Project that it had previously withheld on national security grounds. *See* 656 F.2d at 735. This change of mind arose when the Carter Administration took office, bringing with it a new view on " 'whether the fact of CIA's past involvement in the Glomar Explorer program still required protection from disclosure on national security grounds.' " *Id.* at 735 n. 27 (quoting Letter from Barbara Allen Babcock, Asst. Attorney General, to Hon. Gerhard A. Gesell (July 15, 1977)). Thus, while the Plaintiffs are correct that there was a change in policy, that change was the Carter Administration's conclusion that the Government's earlier determination that the 2000 pages must be withheld *was in error*. The *Military Audit Project* plaintiffs then argued that this confession of error established that the Government's later exemption determinations could not be trusted. *See* 656 F.2d at 753–54.

The Plaintiffs in this case make an almost identical argument: Because the Government's earlier exemption determinations were incorrect in part, this Court should not defer to later claims that materials are properly redacted or withheld. The critical internal step of logic is the same in both instances, namely, that because the Government earlier made mistakes, there is a good chance it is making mistakes again. It is that proposition that the Court of Appeals so "emphatically reject[ed]" in *Military Audit Project*, 656 F.2d at 754.

The Plaintiffs assert that this interpretation of *Military Audit Project* is belied by *Meeropol v. Meese*, 790 F.2d 942 (D.C.Cir. 1986). They specifically invoke that portion of the *Meeropol* opinion holding that "[t]he substantial number of errors revealed by examining a sample of the agency's claims . . . 'must be understood as calling into question the validity of all exemptions, total and partial, claimed' by the agency." Plaintiffs' Reply in Support at 3–4 (quoting *Meeropol*, 790 F.2d at 960).

In quoting *Meeropol*, however, the Plaintiffs conspicuously omit the remainder of the Court of Appeals' sentence, which clearly refers only to those exemptions claimed "during that [1975] time period." That caveat is crucial because this section of the *Meeropol* opinion dealt only with a specific set of records that the FBI had not reprocessed despite its admission that its original processing scheme had resulted in substantial errors. *See* 790 F.2d at 960 ("The FBI has never been required to reexamine those documents, and only chose to reexamine those pages included in the [*in camera*] sample" from which the errors had been discovered). The Court of Appeals remanded with instructions that the agency itself reprocess those documents, subject to oversight by the District Court. *Id.*

The Defendants in this case, in contrast, have fully complied with *Meeropol* in that they have rereviewed each of the documents in light of the Plaintiffs' claims. *See* Third Declaration of Davis S. Van Tassel, *supra*, *passim*. And, as discussed in the July 28, 1995 Memorandum Opinion, this Court is satisfied that the relevant *Vaughn* indices and supporting affidavits now sufficiently, accurately, and correctly reflect the application of the FOIA's exemption standards.

The relevant holding of *Meeropol* therefore is set forth in an entirely separate section of the decision. Earlier in its Opinion, the Court of Appeals discussed the Government's release of over 8000 pages of additional materials only after the plaintiffs protested that seemingly relevant files had not been produced. 790 F.2d at 952. To the plaintiffs' argument that the Government's acts suggested that it could not be trusted to characterize materials accurately as exempt, the Court in *Meeropol*, relying on *Military Audit Project*, *supra*, explained:

[W]e find the incidents cited by [plaintiffs] suggest not bad faith, but rather that the FBI was cooperating with [plaintiffs] by meeting with them repeatedly, responding to their inquiries, conducting numerous additional searches, *and producing records when error was discovered.*

790 F.2d at 953 (emphasis added). According to the Court of Appeals, "[W]hat is expected of a law-abiding agency is that *it*

admit and correct error when error is re-vealed." *Id.* (emphasis added). That is what the Defendants have done in this case. While the Defendants' past errors are one factor in favor of conducting *in camera* review, this Court finds that the prudential factors set forth by the Court of Appeals in *Military Audit Project* and *Meeropol,* considered in light of the totality of circumstances in this case, weigh against drawing a sufficiently unfavorable inference from the Defendants' actions to justify conducting an *in camera* review of additional documents.

The Plaintiffs remain concerned that there is still some risk of an erroneous exemption determination. In support, they invoke this Circuit's decision in *Schiller v. NLRB,* 964 F.2d 1205 (D.C.Cir.1992), to the effect that " '[t]here is no excuse for submitting a *Vaughn* index that contains errors, even minor ones.' " Plaintiffs' Motion for Partial Reconsideration at 2 (quoting *Schiller,* 964 F.2d at 1209). While that proposition is indisputable, it is in absolutely no tension with the Court of Appeals' holding in *Military Audit Project, supra.* Rather, the Court in *Schiller* merely admonished the Government that it is responsible for producing completely accurate FOIA indices for opposing parties, who cannot themselves view the withheld documents. The Court in *Schiller* did not hold or even suggest that an initially incorrect determination that a document was exempt from disclosure under FOIA, later rectified, gave rise to an inference that other exemption determinations by the Government were not trustworthy. This Court will draw no such inference. Accordingly, the Plaintiffs' Motion for Partial Reconsideration shall be denied.

**III. BECAUSE THE DEFENDANTS HAVE SUFFICIENTLY EXPLAINED WHY CERTAIN MATERIALS IN WHITE HOUSE INTELLIGENCE SUMMARIES ARE EXEMPT FROM DISCLOSURE, THEY ARE ENTITLED TO SUMMARY JUDGMENT**

Also before the Court is the Defendants' Supplemental Memorandum in Support of Summary Judgement RE: White House Intelligence Summaries (dated Aug. 11, 1995).[3] As with the Plaintiffs' Motion to Reconsider, this Supplemental Memorandum arises out of the Court's July 28, 1995 Memorandum Opinion and Order. For the reasons set out below, the Court is satisfied that the Defendants have complied in both form and substance with the July 28, 1995 Order. Further, the Defendants have now satisfied their burden under the FOIA of providing sufficient grounds for withholding all or portions of the White House Intelligence Summaries at issue; summary judgment for the Defendants is therefore appropriate.

**A. BACKGROUND**

Several of the Plaintiffs' FOIA requests involved the contents of eighty-eight White House Intelligence Summaries. After the Defendants produced their *Vaughn* index of these materials, the Plaintiffs challenged the Defendants' failure to segregate and release nonexempt material within the Summaries, focusing primarily on the fact that most of the Summaries' country captions and source citations had been withheld. *See* Plaintiffs' Memorandum of Points and Authorities at 5; *see also id.* at 36 ("Defendants have provided no explanation for why the topic lines of the summary paragraphs cannot be segregated and released.").

In the July 28, 1995 Memorandum Opinion, the Court concurred with the Plaintiffs that the Defendants had failed to process the Summaries adequately. It therefore ordered the Defendants to "submit another *Vaughn* Index with respect to these documents," and further provided that the "Plaintiffs shall have an opportunity to challenge any exemptions asserted by Defendants." Memorandum Opinion at 26; *see also* Order of July 28, 1995, at 2 ("Defendants shall file another *Vaughn* Index with respect to the White House Intelligence Summaries at issue and a brief supporting any claims of exemption....").

---

**3.** Considered along with this Supplemental Memorandum are the Plaintiffs' Opposition (dated Aug. 18, 1995), the Defendants' Reply (dated Aug. 24, 1995), and the Defendants' Filing RE: Excerpts from Prior *Vaughn* Index Pertaining to White House Intelligence Summaries (dated Aug. 24, 1995).

On August 11, 1995, the Defendants filed their Supplemental Memorandum setting forth the results of their efforts to comply with this Court's Order. According to the Director of Access Management for Defendant National Security Council:

> [W]e looked individually at each excision in the 88 documents to determine if we could declassify and release the country caption or the source citation. We released all country captions and source citations that were not specifically linked with intelligence activities. In addition, wherever possible we declassified country captions that were linked with intelligence activities whenever release would not comprise sources or methods or damage United States foreign relations.

Fourth Declaration of David S. Van Tassel (appended to Defendants' Supplemental Memorandum as exh. 1) at 2. That rereview resulted in the release of a total of 370 country captions and source citations, from eighty-one of the eighty-eight documents. *Id.* at 1–2.

While the Defendants did submit to the Court and deliver to the Plaintiffs the newly released materials, they initially did not file a *Vaughn* index setting forth their rationale for withholding the remaining country captions and source citations. According to the Defendants, such a filing was unnecessary because materials

> that remain exempt from disclosure continue to be withheld for the reasons stated in the [earlier] *Vaughn* index. . . . The justification for each excision that includes country captions and source citations together with the substantive text is specifically explained in the *Vaughn* index previously submitted in this case. The rereview of country captions and source citations has not altered the reasons for those excisions that remain unchanged.

Fourth Declaration of David S. Van Tassel, *supra*, at 3–4; *see also* Defendants' Supplemental Memorandum at 6 ("Defendants' full justifications for all excisions in the documents have been previously set out in defendants' *Vaughn* index on file with the Court, and are intended to be incorporated here by reference.").

The Plaintiffs thereafter filed an Opposition, which set forth three objections to the Government's decision to incorporate the earlier *Vaughn* index by reference: first, by not producing a new *Vaughn* index the Defendants' "shirk[ ]" their "responsibility to provide an index that will facilitate court review"; second, the Court had previously ruled the earlier index insufficient; and third, the earlier index did not specifically explain why headings (as opposed to the body of the Summaries) were withheld. Plaintiffs' Opposition at 5–6.

In response to the Plaintiffs' claim that a *Vaughn* index was explicitly required by the terms of the July 28, 1995 Order, the Defendants have filed with the Court another copy of both those portions of their earlier *Vaughn* that relate to the eighty-eight Intelligence Summaries and copies of the coded documents themselves. The Defendants having complied with the terms of the July 28, 1995 Order, the Court concludes that the Plaintiffs' arguments are without merit. There being no other challenge to the Defendants' stated reasons for withholding materials in the Intelligence Summaries, summary judgment as to this issue is appropriate.

### B. *DISCUSSION*

■ At the outset, the Court notes that the Plaintiffs' Opposition on its face objects to the Defendants' initial decision not to file a *Vaughn* index along with their Supplemental Memorandum. The Court will assume that the Plaintiffs would object on the same grounds to the Defendants' subsequent documentary filing, which simply sets forth copies of the relevant entries from the earlier index, along with copies of the documents themselves.

The Plaintiffs initially argue that the Defendants were required to produce an entirely new *Vaughn* index setting forth the justifications for continuing to withhold country captions and source citations. The Court disagrees. What are relevant are the substance of the Government's review and its stated justifications for withholding materials; the Defendants need not, as they put it, "go through the empty exercise of parroting

the prior *Vaughn* [index] when the withholdings already have been thoroughly explained," Defendants' Reply at 4. In the passages quoted *supra*, the Defendants' Supplemental Memorandum clearly put the Plaintiffs on notice that those captions and headings that were not released were withheld for the very reasons (and only for the reasons) set forth in the earlier *Vaughn* index.

This case is therefore distinct from *Founding Church of Scientology v. Bell*, 603 F.2d 945 (D.C.Cir.1979) (per curiam), *quoted in* Plaintiffs' Opposition at 5. In *Founding Church*, the Government did not produce a required *Vaughn* index at all. Instead it simply referred to several separate affidavits, from which it alleged that the plaintiffs could "divine the asserted justification for withholding or deleting all material at issue here." 603 F.2d at 948. In this case, the Plaintiffs have been provided with a *Vaughn* index that the Defendants believe explains the withholding of all extant materials, including country captions and source citations.

The Plaintiffs' second argument is that this Court rejected that very index in its Memorandum Opinion of July 28, 1995 on the ground that "it was prepared at a time when defendants admittedly were not even considering whether each heading or source line was itself classified." Plaintiffs' Opposition at 5. By this argument, the Plaintiffs mischaracterize the Defendants' position.

The Defendants are not merely resubmitting their earlier index to this Court. Instead, they have rereviewed the country captions and source citations by "look[ing] individually at each excision." Fourth Declaration of David S. Van Tassel, *supra*, at 2. For captions and citations that it continued to withhold, the Government invoked the very exemptions that it had previously set forth. Accordingly, it resubmitted the relevant sections of the earlier *Vaughn* index. *See* Defendants' Reply at 4–5 ("[D]efendants fairly read the intent of the Court's Opinion and Order to provide defendants with the opportunity to supplement the existing record with another *Vaughn* [index] if and only if any of the rationales for withholding no longer made sense. . . ."). It is therefore no longer

true that the text of the earlier *Vaughn* index does not reflect careful consideration of whether individual country captions and source citations may be released as segregable material.

The Plaintiffs' third argument is that the earlier

> *Vaughn* index does not make clear the basis for the agency's refusal to release certain country headings and source lines. The justifications provided in this *Vaughn* index relate to the reasons for withholding the summary paragraphs in the documents, not to the rationale for withholding even the names of the countries involved or the source of the information.

Plaintiffs' Opposition at 6. According to the Defendants, however, the limited number of captions and citations still withheld simply cannot be segregated from the body of the Summaries for the purpose of disclosure. *See* Defendants' Reply at 6 ("[E]ach withheld portion is fully and individually justified by annotation in the margins of the document, and the annotations unmistakedly apply to only the specific withheld material as marked."). The Court, upon review of the index and the Defendants' representations, concludes that the non-disclosed country captions and source citations are inextricably intertwined with the bodies of the Summaries, so as to be exempt from disclosure. *See Krikorian v. Department of State*, 984 F.2d 461, 466 (D.C.Cir.1993); *Mead Data Central v. Department of Air Force*, 566 F.2d 242, 260 (D.C.Cir.1977).

The fact that the Government has prepared a *Vaughn* index does not necessarily mean, of course, that it is entitled to summary judgment. The very purpose of such an index (once produced in proper form) is to allow FOIA Plaintiffs to gauge, and if appropriate challenge, the Government's rationale for withholding allegedly exempt materials. The Plaintiffs in this case, however, have made no such challenge. Their sole argument was that the index was insufficient.

This continued to be true after they were informed that the Defendants intended to rely on their earlier *Vaughn* index to set forth the explanations for withholding the

18

remaining country captions and source citations. *See* Plaintiffs' Opposition at 5–7 (attempting to rebut sufficiency of earlier *Vaughn* index, but not disputing that "Defendants seek to rely on the justifications previously set forth in the *Vaughn* index filed in March, 1995"). They therefore have received their "opportunity to challenge any exemptions asserted by Defendants," Memorandum Opinion at 26, and made no such challenge. Given that the Plaintiffs raise no other issue in regard to the index, the Court has addressed their sole concern. *See* Defendants' Supplemental Memorandum at 6 n. 8; Defendants' Reply memorandum at 4 n. 3. The Defendants are therefore entitled to summary judgment.

## IV. *CONCLUSION*

For the foregoing reasons, the Plaintiffs are not entitled to reconsideration of this Court's decision not to review fourteen documents *in camera.* In addition, the Defendants are now entitled to Summary Judgment as to the Plaintiffs' challenges to the Government's withholding of White House Intelligence Summaries. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.